## THE NEW YORK STEAM COMPANY, RESPONDENT, *v.* ISAAC STERN, APPELLANT.

*Marketable title — when a grantor will be presumed to convey all interests owned by him, either individually or as assignee for creditors — when an assignment for the benefit of creditors will be presumed to have been fully executed and to have no effect — 1875, chap. 545 — when the purchaser will be compelled to accept a title founded on adverse possession.*

In this action, brought to specifically enforce the performance of a contract for the purchase of five lots upon the south-easterly side of Thirtieth street, New York city, the defendant alleged, as one of his objections to the title, that the vendor had not acquired the title to a strip of land about fifty feet in depth, running through the lots from east to west, formerly known as Stewart street. It appeared on the trial that on March 2, 1822, William James Stewart, the owner of an undivided half of the property, executed a deed assigning the property to John James Stewart, the owner of the other undivided half, for the benefit of his creditors, under the non-imprisonment act of 1819, and on September 5, 1825, John James Stewart executed and delivered a deed to Alpheus Dimick, in which he conveyed "a certain lot, parcel or tract of land in said ward and city, known or distinguished as Stewart street, adjoining the aforesaid lot," and, also, an undivided fourth in two other pieces of property described in such deed.

*Held,* that, from that circumstance and the general language cited above, it was to be inferred that the object and intent of the grantor in the deed was not only to convey his own undivided interest, but also that which he had obtained under the assignment to him from William James Stewart, and that the fact that no claim had ever been made by any person in the interest of William James Stewart to his undivided half tended to warrant this construction of the deed.

That an assignment made on May 11, 1812, by Matthias Ward, who then owned the property, to Anthony Dey, which was also objected to as a defect in the title, might be assumed to have been long since executed and completed in all its trusts, and to have ceased to be in any manner operative or effective so far as this property was concerned.

That this seemed to be the effect of chapter 545 of 1875, as it was considered in *Kipp* v. *Hirsh* (103 N. Y., 565), thereby overruling *McCahill* v. *Hamilton* (20 Hun, 388).

All the premises included in the contract were owned by Charles Smyth at the time of his death. His son Constantine, who inherited the property, did not include in the description of the property conveyed by him to one Swift all of the said premises, but omitted therefrom a strip on the easterly part of the lot, four feet and nine inches in front and nineteen feet ten inches in depth. The referee, before whom this action was tried, found, however, that there had been such an adverse possession of the property, commencing previous to the year 1848, and continuing to the time of the commencement of this action on June 28, 1886, as vested the plaintiff with the title thereto, and that the defendant should be compelled to accept such title.

*Held,* that as this finding established an adverse possession of the property, extending over a period of thirty-eight years, the statutes in force, at the time when the possession commenced (secs. 3 and 16 of 2 R. S. [2d ed.], pp. 221 and 223), barred any entry on the part of Constantine Smyth, or his heirs-at-law, whether he was living when the adverse possession commenced to run in 1848, and died thereafter leaving infant heirs, or whether he died prior to that time leaving such infant heirs, and vested the plaintiff, who succeeded to that possession, with the title to the part of the property omitted from the description.

That the title was such as to authorize the referee to compel the defendant to accept it.

*Shriver* v. *Shriver* (86 N. Y., 575); *Ottinger* v. *Strasburger* (33 Hun, 466; affirmed, 102 N. Y., 692); *Bicknell* v. *Comstock* (113 U. S., 149) followed; *Mott* v. *Mott* (68 N. Y., 247) not followed.

That, as the case appears by the evidence and the findings of the referee, there was no probability that the people of the State acquired any right, by escheat, in this piece of property on the death of Smyth without heirs.

APPEAL from a judgment recovered on a trial at the Special Term.

This action was commenced for the specific performance by defendant of a contract for the purchase of certain real estate on the south side of Thirtieth street in New York, seventy-five feet east of Seventh avenue, containing 115 feet, front and rear, by half the block. On the day fixed for closing the title, June 15, 1886, the defendant refused to accept the deed tendered, on the ground that the plaintiff's title to a portion of the premises was defective.

The substantial questions claimed by appellants to affect the title, and which have been decided by the referee adversely to him are: 1. That the title to a portion of the premises agreed to be conveyed, a strip about fifty feet in depth, running through the lots from east to west, formerly known as Stewart street, was in the assignee of William James Stewart under an assignment made in 1822; and such assignee has not been divested of title. 2. That the title to another portion of the premises, the most easterly five feet by about twenty, was in Anthony Dey, the assignee of Matthias Ward, in 1812; and such assignee has not been divested of title. 3. If such title to lot 32 was at any time in Constantine Smyth, as the heir-at-law of Charles Smyth, who died in 1835, Constantine Smyth or his heirs have not been divested of title; and in the event of the failure of heirs competent to take, the title is in the State by escheat.

*Adolph L. Sanger*, for the appellent.

*J. W. Hawes*, for the respondent.

DANIELS, J.

The action has been brought to specifically enforce the performance of a contract for the sale and conveyance of five lots of land upon the southerly side of Thirtieth street commencing seventy-five feet east of Seventh avenue. The defendant resisted the action on the ground that a marketable title would not be conveyed to him if he had accepted the deed proposed to be delivered. One of the objections made in his behalf related to what was called Stewart street, laid out over a portion of the southerly part of the premises. But this objection will be answered by the effect which the law will give to the assignment made by William James Stewart, the owner of an undivided half of this part of the property, to John James Stewart under the non-imprisonment act of 1819, and the deed made and delivered by the latter. This assignment was made for the benefit of his creditors and to relieve himself from imprisonment, on the 2d of March, 1822. And John James Stewart having the right to sell this interest as well as his own undivided half on the 5th of September, 1825, executed and delivered a deed to Alpheus Dimick, in which he conveyed " a certain lot, parcel or tract of land in said ward and city known or distinguished as Stewart street adjoining the aforesaid lot," etc. This deed also conveyed an undivided fourth in two other pieces of property described in it. And from that circumstance, and the general language already cited, it may be inferred that the object and intent of the grantor in the deed was not only to convey his own undivided interest, but also that which he had obtained under the assignment to him from William James Stewart. And the fact that no claim has ever been made by any person in the interest of William James Stewart to this undivided half, is an additional circumstance tending to warrant the construction that the deed should have this effect.

And the assignment made by Matthias Ward on the 11th of May, 1812, to Anthony Dey, may be assumed to have been long since executed and completed in all its trusts, and to have ceased to be in any manner operative or effective so far as this property is concerned. This seems to be the effect of chapter 545 of the Laws of 1875, as it

was considered in *Kipp* v. *Hirsh* (103 N. Y., 565), thereby over-ruling the case of *McCahill* v. *Hamilton* (20 Hun, 388). It is not necessary to attempt to make a more extended examinaiton of this part of the controversy, for the facts and the law seem to indicate that it may well be disposed of in this manner, and that will answer all the purposes of this part of the present action.

As to the piece of ground, however, forming the easterly part of the fifth lot, the case depends upon other and different evidence. Charles Smyth appears to have become the owner of all the premises included in the contract and proposed to be conveyed by the deed, but his son Constantine Smyth, who inherited his property, did not in its description as that has been construed by the referee, convey this part of the premises to Jeremiah Swift, his grantee. But it has been urged in support of the judgment, that the referee's construction of the deed, excluding from its operation and effect this part of the property, should not be supported. But the court has no power to reject essential findings of the referee forming a part of the basis of his judgment, and substitute others in their place upon which the judgment may more clearly be made to stand. It is required to take the facts as they have been found for the disposition of the case. And if it cannot be sustained on those facts, then the only mode provided for their correction is another trial of the action in which they may be more favorably stated for the plaintiff. It is not intended to be intimated that the referee was wrong in the construction which he gave to the deed, but if another trial should take place facts may be established by the evidence under which the court might be warranted in so construing the deed to Swift as to include this disputed part of the property. For the court is permitted to place itself in the position of the parties at the time when the deed was executed and delivered to consider and determine its effect. And the attendant circumstances, together with the deed, may be sufficient to warrant the construction that this part of the property as well as that fully described, was in fact conveyed to Swift.

The conclusion of the referee, however, was that there had been such an adverse possession of the property as vested the plaintiff with its title and obligated the defendant to accept it under his contract. This possession is shown to have commenced previous to the

year 1848, while the action was brought on the 28th of June, 1886, about thirty-eight years after the evidence proved possession to have been taken of this parcel of the property by the grantees of the title to that clearly described in the deed. And that is sufficient under the statutes as they were in force at the time when the possession commenced, as the referee has found that fact, to bar an entry and vest the plaintiff who succeeded to that possession with the title to this part of the property. By those statutes an action for the recovery of the possession of real property was required to be brought within twenty years after the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question. (2 R. S. [2d ed.], 221, § 5.) And by section 16 of the same article (p. 223) this time could be no further extended than for the period of ten years on account of the disability of infancy. If Constantine Smyth, therefore, died after 1848, this possession had commenced to run against him. And if he died prior to that time and left infant heirs it had commenced to run against them. And so it would continue to run against infant heirs left by him if he died after the commencement of this possession. In either of these events which appear to include all the possibilities of claimants, the entire period of infancy and the ten years added to it would expire in the year 1878. And after that time no action could be maintained by either of the infant heirs of Constantine Smyth for the recovery of the possession of this piece of ground.

It appeared as a matter of fact that no person had claimed to be entitled to any interest in this piece of land except the claimants under the deeds since the time Constantine Smyth executed and delivered his deed to Jeremiah Swift. And that is a circumstance tending to sustain the conclusion that it was at least understood by the parties to the deed that it did or was in fact intended to convey this small piece of ground. It was probably omitted by some inadvertance or mistake from the description contained in the deed, for there obviously could have been no reason as the case now appears for Smyth, the grantor, retaining four feet and nine inches front of the easterly part of the fifth lot by nineteen feet and ten inches in depth, which includes the property, the title to which is in dispute at the time when he sold the property. It is more reasonable to believe that the deed was designed to include all the lands contained in the five lots, and that it was understood to have that effect between

the parties. And for that reason the possession of the grantees under the title conveyed by the deeds has been acquiesced in by Smyth and those who might claim the property under him. Swift, who was Smyth's grantee, sold and conveyed the land by the same defective description to Mixon. This was in 1838, and in 1844 he joined with Mixon in a deed including the whole of the land to Trenor, which he could only consistently have done upon the understanding that it was intended he should become the owner of it by the deed which Smyth delivered to him. And this state of facts presents a case in which upon a trial before a jury the court would not only have been justified, but it would have been its duty to direct a verdict in favor of the title.

Whether even such a title, however, should be taken by a vendee was left in doubt by *Mott* v. *Mott* (68 N. Y., 247); but the case of *Shriver* v. *Shriver* (86 id., 575), tended very directly to solve that doubt in favor of the title. And that was followed, as it may be in the present instance in *Ottinger* v. *Strasburger* (33 Hun, 466; affirmed 102 N. Y., 692). These authorities proceed upon the established principle that the claimant and party in possession in this manner will acquire the absolute title to the property, notwithstanding such a defective conveyance as the one which was delivered by Smyth to Swift. And that was held to be the effect of such possession in the case of *Bicknell* v. *Comstock* (113 U. S., 149).

There is no probability that the people of the State acquired any right to this piece of property by the death of Smyth without heirs. No suggestion or objection of that nature was made upon the trial of the action, where it should have been made if reliance was intended to be placed upon it. For there it might have been met with proof at once entirely removing it from all the possibilities of the case. The probabilities, on the other hand, are very decidedly against the defendant that no such title ever vested in the people. No claim of that nature appears to be made by or on behalf of any person. And if it had, the statute already referred to required that the action should be brought within twenty years after the right or title accrued, or after the party under whom the people might claim had received the rents and profits of the real estate, or some part thereof. No case was presented within these provisions of the statute, and no question was raised rendering

them of any serious importance in the litigation. But, as the case appears by the evidence and the findings of the referee, a title in the plaintiff was established, which there is not the slightest probability will ever be questioned against the defendant or his grantees. And that title he was bound to receive, as it was offered to him by the deed the plaintiff proposed to deliver, and which he refused to accept.

The judgment in the case should be affirmed; but, considering all the circumstances, justice would best be promoted, probably, by directing the affirmance to be without costs of the appeal.

BRADY, J., concurred; VAN BRUNT, P. J., concurred upon the record as made up for this appeal.

Judgment affirmed, without costs.