ISAAC L. KIP et al., Executors, etc., Appellants, *v.* EDWARD HIRSH, Respondent.

|103  565
|140  107

In 1835 K., plaintiff's testator, sold certain lots in New York city to D., taking a mortgage thereon to secure part of the purchase-money. In 1840 D. executed an assignment of his property, including the lots, for the benefit of creditors, which provided that when the trust was fully executed the surplus, if any, should be returned to the assignor; the assignment was recorded. Soon thereafter K. commenced an action to foreclose the mortgage, making D. a party defendant, but not his assignee. K. bid off the property and received a master's deed, which was recorded in 1841. The lots were vacant and so remained until 1867, when plaintiffs, as executors of and having authority under the will of K., leased the lots, the lessee paying as rent the taxes thereon; he took possession and inclosed the lots, and he and his successors in business have occupied them since. In 1875 defendant contracted to purchase the lots, but refused to complete the purchase, claiming there was a defect of title by reason of the omission to make the assignee of D. a party to the foreclosure suit. In an action to compel specific performance it appeared that the assignee lived twenty-five years after the assignment, and D. thirty years; that no successor of the assignee in the trust was ever appointed, and it did not appear that he ever claimed title to the lots, or that any creditor of D. or other person ever made claim under the assignment, or attempted to enforce the trust. *Held*, the circumstances created a legal presumption that the purposes for which the trust was created, and consequently the estate of the trustee, had ceased and the title had reverted to K. or those claiming under him; and that, therefore, independently of the act of 1875 (Chap. 545, Laws of 1875) the assignment was no substantial objection to the title.

*It seems* that said act of 1875, which declares that where an estate has been conveyed to trustees for the benefit of creditors and no different limitation is contained in the instrument creating the trust, it shall be deemed discharged in twenty-five years after its creation, and so much of the estate not conveyed by the trustees shall revert to the grantor, etc., is applicable to the case; that it applies as well to assignments made before as to those made after its passage.

*McCahill* v. *Hamilton* (20 Hun, 388), distinguished and questioned.

(Argued October 28, 1886; decided December 7, 1886.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made November 13, 1885, which reversed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to compel the specific performance of a contract for the purchase by defendant of certain lots in the city of New York.

The material facts are stated in the opinion.

*Isaac L. Miller* for appellants. Defendant is entitled to a marketable title, but the objection thereto must be substantial, not fanciful. (*Fleming* v. *Burnham*, 100 N. Y. 1–10; *Dunham* v. *Minard*, 4 Paige's Ch. 443.) If the failure to make Smith (the assignee) a defendant in the foreclosure suit is any objection to the title, such objection may be cured or removed by parol evidence. (*Hellreigel* v. *Manning*, 97 N. Y. 56, 60.) The interest of the assignee was only a right to bring an action to redeem said property from said mortgage. (*Shriver* v. *Shriver*, 86 N. Y. 575, 580; *Winslow* v. *Winslow*, 47 id. 261; *Pell* v. *Ulmar*, 18 id. 137–141.) The plaintiffs in taking possession of the premises, by leasing same to Reeber, became mortgagees in possession, and a mortgagee in possession can defend his title against the owner of the equity of redemption in any action, save one for an accounting and to redeem, and the mortgagor's whole interest is gone if he does not bring the action to redeem within the time required by statute. (*Shriver* v. *Shriver*, 86 N. Y. 580; *Van Duyne* v. *Thayre*, 14 Wend. 233; *Phyfe* v. *Reiley*, 15 id. 248; *Pell* v. *Ulmar*, 18 N. Y. 142; *Chase* v. *Peck*, 21 id. 586; *Hubbell* v. *Moulson*, 53 id. 225, 227; *Ingersoll* v. *Savage*, 2 Pick. 277.) An action to redeem is not an action for the recovery of real property. It is purely an equitable remedy, and prior to the adoption of the new Code was governed by section 97 of the old Code, which limited the time therefor to ten years. (*Miner* v. *Beekman*, 50 N. Y. 337; *Hubbell* v. *Sibley*, 5 Lans. 51; affirmed, 50 N. Y. 473; *Hubbell* v. *Medbury*, 53 id. 101; *Peabody* v. *Roberts*, 47 Barb. 103; *Cleveland* v. *Boerum*, 21 N. Y. 617.) The statute of limitations runs against a trustee. (*Hubbell* v. *Medbury*, 53 N. Y. 98–100.) Plaintiffs' rights are not affected by section 379 of the present Code. (*Shriver* v. *Shriver*, 86 N. Y. 581.) The testator's interest in the lots being only person-

alty, viz., the mortgage, the same passed to the executors as part of the assets. (3 Redf. Law of Wills [2d ed.], 130, 144; 3 Wait's Actions and Defenses, 241-244; *Lockman* v. *Reilly,* 95 N. Y. 71, 72; *Vallentine* v. *Belden,* 20 Hun, 527, 537; *Cook* v. *Ryan,* 29 id. 249; *Long* v. *O'Fallon,* 19 How. [U. S.] 116; Wms. on Exrs. 650, note *d.*) Clear adverse possession for the time required by statute makes a title which a purchaser may not refuse. (*Shriver* v. *Shriver,* 86 N. Y. 581, 586; *Cahill* v. *Palmer,* 45 id. 478; *Sweetenham* v. *Leary,* 18 Hun, 284; *Grady* v. *Ward,* 20 Barb. 543; *Willard* v. *Renner,* 65 How. Pr. 245.) To uphold such a title a grant from the true owner will be presumed. (*Cahill* v. *Palmer,* 45 N. Y. 485; *Ward* v. *Warren,* 82 id. 265, 268; *Woolsey* v. *Morse,* 19 Hun, 273; *Bicknell* v. *Comstock,* 113 U. S. 149; *Leffingwell* v. *Palmer,* 2 Black, 605; Angell on Lim., § 306; *Croxall* v. *Sherrard,* 5 Wall. [U. S.] 268, 289.) As payment is always an affirmative defense, it necessarily follows that the presumption thereof is only available in like manner. Such presumption is in effect a statute of limitation merely. It is useful as a shield, not as an instrument of attack. (*Morey* v. *Farmers' L. & T. Co.,* 14 N. Y. 302; *Johnson* v. *A. & S. R. R. Co.,* 54 id. 416; *Lawrence* v. *Ball,* 14 id. 477, 480.) The statute of 1862 (Chap. 365) is not applicable. (*In re Townsend,* 4 Hun, 31.) Land thus acquired by an executor is regarded as a substitute for the mortgage, and takes its place for all purposes as between the executor and the parties interested in the estate. It is not treated as land belonging to testator, and his heirs or devisees take no direct interest in it. (*Lockman* v. *Riley,* 95 N. Y. 64, 71.) Conceding that the trust deed was an acknowledgment by Delavan of the debts referred to in it, so that on the date thereof (May 16, 1840) the statute of limitations then first commenced to run, the debts have long since outlawed. No recognition or payment on account thereof by Smith, the trustee, would have the effect of reviving them. (*Winchell* v. *Hicks,* 18 N. Y. 558; *Pickett* v. *Leonard,* 34 id. 175; *Harper* v. *Fairley,* 53 id. 445; *Sterricker* v. *Dickinson,* 9 Barb. 516, 519.)

*John H. V. Arnold* for respondent. It was incumbent upon plaintiffs to show that the assignee's title had been cut off. (*McCahill* v. *Hamilton*, 20 Hun, 388 ; *Gage* v. *Brewster*, 31 N. Y. 218 ; *Murray* v. *Ballou*, 1 Johns. Ch. 567 ; *Skeel* v. *Spraker*, 8 Paige's Ch. 182, 189 ; *Heatly* v. *Finster*, 2 Johns. Ch. 158 ; *Greene* v. *Slater*, 4 id. 38 ; *Hayden* v. *Bucklin*, 9 Paige's Ch. 512 ; *Scudder* v. *Van Amringe*, 4 Edw. Ch. 29 ; *Farmers' L. & T. Co.* v. *Dickson*, 9 Abb. Pr. 61 ; *Stevens* v. *O'Connell*, 35 N. Y. 104 ; *Burroughs* v. *Rieger*, 12 How. Pr. 171 ; *Leitch* v. *Wells*, 48 N. Y. 585 ; *Holbrook* v. *N. J. Zinc Co.*, 57 id. 632.) The title offered is not such a one as the contract calls for. (*Hartley* v. *James*, 50 N. Y. 42 ; *Shultz* v. *Rose*, 65 How. 75.) The burden rests upon plaintiffs to show that they have a good title. ( *Wilson* v. *Holden*, 16 Abb. 133 ; *Argall* v. *Raynor*, 20 Hun, 267 ; *Bucklin* v. *Ford*, 5 Barb. 393.)

Rapallo, J. In June, 1835, Leonard W. Kip, the plaintiffs' testator, was the owner of the lots of land in controversy and in that month he conveyed them to Daniel E. Delavan, taking from him a mortgage on the same lots to secure $1,500, part of the purchase-money. The deed and the mortgage were recorded on the 29th of June, 1835.

On the 16th of May, 1840, Delavan made a general assignment to Walter J. Smith, conveying the lots in question, together with a very large amount of other real estate and personal property, in trust, to sell the real estate with all convenient speed, and apply the proceeds of the real and personal estate to the payment first, of certain specified debts of the assignor ; next, to the payment of all his other debts, and when the trust was fully executed to return the surplus, if any, to the assignor. This assignment was recorded June 6, 1840.

In August, 1840, Leonard W. Kip commenced a suit for the foreclosure of the above-mentioned mortgage, making Delavan a party defendant ; but his assignee, Smith, was not made a party.

This foreclosure suit proceeded to a decree, and the mortgaged premises were sold under the decree and bought in by Leonard W. Kip, and a master's deed was executed to him December 30, 1840, and recorded February 23, 1841.

The mortgaged premises consisted of three lots on the easterly side of Fourth avenue, between One Hundred and Twentieth and One Hundred and Twenty-first streets, in the city of New York. They were vacant and unproductive, and so continued until the death of Leonard W. Kip, which took place in 1863. He left a will, of which the plaintiffs in this action are the surviving executors. By this will, after making certain bequests, he devised the residue of his real and personal estate to his executors, in trust for the benefit of his wife during her life, directing them to let and lease all his productive real and leasehold estates, and empowering them, at any time after his decease, to sell all vacant and unproductive lots and divide the proceeds among his children.

On the 15th of April, 1867, the plaintiffs, as executors of the will, leased the lots in question to John J. Reeber for the term of nine months from the date of the lease, he agreeing to pay as rent the taxes on said lots as soon as due and payable. Reeber took possession of the lots under this lease and inclosed the same with a fence on all four sides and occupied 'em for storing lumber from April 15, 1867, until about the year 1883, when he relinquished his business to his sons, who have since then carried on the same business on the premises as his successors.

On the 17th of March, 1885, the plaintiffs and defendant entered into an agreement in writing, whereby the plaintiffs agreed to sell and the defendant agreed to purchase the premises for the sum of $12,750, payable as set forth in the agreement. But the defendant now refuses to complete the purchase, claiming that the plaintiffs' title is defective by reason of the omission to make Walter J. Smith, the assignee of Delavan, a party to the foreclosure suit through which the plaintiffs' testator derived his title.

If the assignment and the title of the assignee were still sub-

sisting, and the trusts unexecuted, the objection would be un-answerable, but we think that the circumstances of the case are such as to create a legal presumption that the purposes for which the trusts were created have ceased, and that consequently the estate of the trustee has ceased and the title reverted to Delavan, the grantor of the plaintiffs, or those claiming under him. (1 R. S. 730, § 67.) His title was, of course, transferred to the plaintiffs' testator by the sale under the decree, Delavan, the mortgagor, having been a party to the foreclosure. The assignment to Smith was made in 1840, more than forty-five years before the trial of this action, and nearly forty-five years before the making of the contract of sale, and although the trust was to sell the real estate with all convenient speed for the purpose of paying the debts, it is found as a fact that no sale was ever made by the assignee of the property in question or any part thereof. It does not appear that any of the property embraced in the assignment was ever sold, or that the assign-ment was ever acted upon in any manner. Walter J. Smith, the assignee, lived twenty-five years, and Daniel E. Delavan thirty years after the making of the assignment. It is found that no successor in the trust was ever appointed in place of Smith, and it does not appear that Smith ever claimed or as-serted any title to the lots in question under the assignment, or that any creditor of Delavan, or any other person, has ever made any claim under the assignment or attempted to enforce the trust, although the executors of Kip have been in actual possession through their tenants for nearly twenty years. After such a great lapse of time since the making of the assignment and the sale under the foreclosure, we think the presumption that the debts of Delavan secured by the assignment have been paid or in some manner discharged, is so strong that the fact that the assignment once existed is no longer a substantial ob-jection to the title. So much time has elapsed that the pre-sumption of payment would apply even to debts evidenced by specialty or by judgment, and it cannot be conceived that if the debts have not in fact been paid there could be any now outstanding which would not be barred by the statute of lim-

itations. We think there is no danger in holding that, independently of the act of 1875 (Chap. 375), the trusts created by the assignment should, under such a state of facts as exists in the present case, be decreed discharged, and that the estate of the trustee should be deemed to have ceased. No one but the successors of the trustee, if any should ever be appointed, can dispute the title which the defendant will acquire by the conveyance from the executors under the power contained in the will of the testator, and their right to redeem has long been barred by the statute of limitations.

We think the lots in question are embraced in the power of sale. They were unquestionably vacant and unproductive at the time of the death of the testator, and nothing that has happened since has materially changed their condition. The putting of a fence around them and the storing of lumber or building materials thereon did not change their character as vacant lots, so long as they are not built upon ; neither did the lease change their character of unproductive lots, as no rent was reserved, the only agreement on the part of the tenant being to pay the taxes. But we think the testator intended to include in the power the real estate which was vacant and unproductive at the time of his death.

The title of Delavan to which the testator succeeded by his purchase at the foreclosure was subject only to the estate of the trustee. That was not an absolute estate, but only for the purposes of the trust. Whenever those purposes ceased the trust ceased, and the assignor, or those who succeeded to his right, were in by their original title.

We are inclined to the opinion further that the act of 1875 (Chap. 545) is applicable to this case. There is nothing in the act which confines its operation to assignments made after its passage, but, on the contrary, its language imports that it applies to trusts theretofore created. It purports to amend section 67 of the statute of uses and trusts (1 R. S. 730), which provides that " when the purposes for which an express trust shall have been created shall have ceased, the estate of the trustees shall also cease" by adding the following words : " and where

an estate *has been* conveyed to trustees for the benefit of creditors, and no different limitation is contained in the instrument creating the trust, such trust shall be deemed discharged at the end of twenty-five years from the creation of the same, and the estate conveyed to trustee or trustees, and not granted or conveyed by him or them, shall revert to the grantor or grantors, his or their heirs or devisees or persons claiming under them, to the same effect as though such trust had not been created."

To construe this act as relating only to assignments made after its passage would prevent its having any operation until the year 1900, which could not have been the intention of the legislature. The intention to make it apply to past assignments appears clearly from its language, which is, "when an estate *has been* conveyed;" not "shall have been" or "shall be" conveyed.

It is in the nature of a statute of limitation, and, if necessary to sustain its constitutionality, it should be construed as making the lapse of time *prima facie* or presumptive evidence that the trusts have been discharged, and permitting this presumption to be rebutted by evidence. In *Bellinger* v. *Shafer* (2 Sandf. Ch. 293, 296, and cases therein cited), section 67, as originally enacted, was held applicable to trusts created before its enactment, as well as to those subsequently created, and we are inclined to think that the same construction should be placed on the section as amended by the act of 1875.

In the case of *McCahill* v. *Hamilton* (20 Hun, 388), the Supreme Court held a similar outstanding assignment to constitute a valid objection to the title and the act of 1875 not to remedy the defect. It must be observed, however, that in that case it appeared that the assignment had been acted upon, and some sales of real estate had been made under it, though the time when the last sale was made does not appear in the case as reported.

But it is not necessary now to finally decide this point as to the act of 1875, as in the present case nearly double the time prescribed by the act of 1875 has elapsed, and no conveyance has ever been made by the trustee. The presumption of pay-

ment attaches to all the debts, and it can hardly be conceived that any facts can exist which would entitle any person to enforce the trust.

Under these circumstances we think that the defendant will acquire a good and marketable title to the premises by a conveyance from the plaintiffs as executors, and he should be decreed to specifically perform his contract of purchase.

The order of the General Term should be reversed and the judgment at Special Term affirmed, but without costs on this appeal, the question being novel, and there having been one unreversed decision of the Supreme Court tending to sustain the views of the respondent.

All concur, except MILLER, J., dissenting.

Order reversed.