EDWARD ROBERTS, Appellant, *v.* AUGUST BAUMGARTEN et al., Respondents.

The title to lands under the waters of navigable bodies of water is in the People of the state.

*It seems* that the rule of the common law making the ebb and flow of the tide the controlling element in determining as to the navigability of waters does not hold in this country.

In an action of ejectment to recover possession of lands which were formerly covered by Harlem mill creek, a navigable stream, in which the tide ebbed and flowed, it appeared that a dam had been constructed to collect water for mill purposes, conducting by means of sluice-ways and connecting ponds the waters to a mill located on the north side of the creek. Plaintiff claimed under a deed which conveyed the land "north of the mill-pond, * * * including the mill stream and mill-pond with all its privileges and appurtenances, and to shut the mill dam at the south side of said mill where it now lays." *Held,* that the deed did not convey any land covered by the waters of the creek, because, *first,* the grantor's had no title thereto; *second,* the language of the grant was to be construed, not as conveying the bed of the creek, but only the use of or easement in its waters for mill purposes as the same had been acquired by him and developed by the construction of the dam, sluice-ways, etc.

Also, *held,* that proof of an occasional resort to the lands in question, in the cutting of salt meadow grass, would not be sufficient to establish occupancy or possession, in the absence of a deed describing and including them.

In an action of ejectment plaintiff must recover upon the strength of his own title; he may not rely upon any supposed or actual weakness in that of his adversaries.

(Argued June 20, 1888; decided October 2, 1888.)

Appeal from order of the General Term of the Superior Court of the city of New York, made March 30, 1885, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 19 J. & S. 482.)

The nature of the action and the material facts are stated in the opinion.

*John Lindley* for appellant. A prior possession, even without any proof of a paper title, will prevail against an intruder. Title in a private person supposes a grant from the state or from the sovereign power. The presumptions founded in possession alone are, therefore, presumptions in favor of such a grant. (Tyler on Ejectment, 105.) The word "stream" has been construed to include all the space between the banks; that is, between the tops of the banks on each side. (*Howard* v. *Ingersoll*, 13 How. [U. S.] 426.)

*Cephas Brainerd* for respondents. The defendants being in possession of the property are presumed to be the owners of the fee against all the world, and plaintiff was bound to prove title in himself and in those through whom he claimed to derive title. (*Wallace* v. *Swinton*, 64 N. Y. 188, 192; *Whitney* v. *Wright*, 15 Wend. 171; *Lamont* v. *Cheshire*, 65 N. Y. 30, 43.) Mrs. Van Arsdale's testimony as to the cutting of sedge on the south side, even if accepted, establishes no right. (*Roe* v. *Strong*, 107 N. Y. 350.) Private ownership of lands bounded on tide-water only extends to high-water mark. (*Wiswall* v. *Hall*, 3 Pai. 313; *Morgan* v. *King*, 30 Barb. 9; *People* v. *Canal Appraisers*, 33 N. Y. 465, 478; *Halsey* v. *McCormick*, 13 id. 296; *Ex parte Jennings*, 6 Cow. 518; Angell on Tide Waters, 73; *Smith* v. *City of Rochester*, 92 N. Y. 463.) The right to use a stream does not imply ownership of its bed, and the conveyance of a stream, with no terms of enlargement, operates only to transfer the right to the use of the water. (*Jackson* v. *Halstead*, 5 Cow. 216, 219; Co. Litt. 4 b, and Com. Dig. Grant [5th ed.]; *East*

*Hampton* v. *Kirk*, 84 N. Y. 215, 220 ; *Nostrand* v. *Durland*, 21 Barb. 478 ; *Halsey* v. *Corley*, 13 N. Y. 296.) Descriptions similar to that employed in the deed to Sampson convey to the middle of non-navigable streams. (*Ex parte Jennings*, 6 Cow. 518, 544–546 ; *Lunt* v. *Holland*, 14 Mass. 149, 463 ; *Smith* v. *City of Rochester*, 92 N. Y. 463.)

GRAY, J. This action was brought to recover the possession of certain lots of land on the southerly side of One Hundred and Seventh street, between Second and Third avenues, in the city of New York. Originally the premises in question, under plaintiff's claim, were covered by Harlem Mill creek, a small body of water connecting with the Harlem river, and in which the tide ebbed and flowed. To the west of where the Third avenue now is, a dam was constructed to collect water for mill purposes, and by means of sluice-ways and connecting ponds the water-power was conducted to a mill east of Third avenue and north of the creek.

The plaintiff claims to derive his title, through mesne conveyances, from one Benjamin Benson. Benjamin Benson's deed to Peter B. Benson, his son, which was relied upon by the plaintiff as a source of title, conveyed by the following description, viz: : " All that messuage or tenement, being all my estate to the north of the mill pond, between the fence of the widow Storm and the road leading to Harlem, including the mill-stream and mill and mill-pond, with all its privileges and appurtenances, and to shut the mill-dam at the south side of said mill pond, where it now lays," etc.

Under this description plaintiff claims that the whole of Harlem Mill creek, between the tops of its banks, was conveyed, and that the grantee acquired the ownership of the bed of that stream. Such a construction of the grant, however, is not permissible, either by well-settled rules of law, or in the light which the facts disclosed by the proofs throw upon the claim.

Harlem creek was subject to the ebb and flow of the tide to a point beyond the premises in question. Such bodies of water,

at common law, were deemed to be navigable and were held to be royal rivers, or the property of the crown. They were placed on the same footing as the sea, and regarded as public highways. This rule of the common law became a part of the fundamental law of this state by the adoption of the original Constitution of 1777. There have been no revisions of that instrument, nor any acts of the legislature, which in any wise affected the continuance of such a rule as a part of the body of the law of our state, and one which governs in cases where the rights of riparian owners to waters subjected to tidal influences are in question.

To the rights of the crown the People of this state succeeded, upon their separation, and the title to the lands under water, where the tide flows and reflows, vested and remained in them. This rule has been uniformly recognized in the adjudged cases in the reports of this state, which discuss the title of the People to such lands. The courts in this country have gone even further and have not felt bound by the distinction that the flux and reflux of the tide is the controlling element in determining the character of our bodies of water. The reasons which dictated the rule in England, where navigability of its waters depended upon tidal influences, were plainly inapplicable to our large inland rivers and lakes.

An elaborate and instructive review of the adjudged cases and of the doctrine laid down in the text books and by publicists, upon the subject of the rights of property in rivers and the lands under their waters, is contained in the case of *People* v. *Canal Appraisers* (33 N. Y. 461).

In addition to the presumption of the navigability of Harlem creek, arising from the proof of the flux and reflux of the tide therein, the testimony tends to prove the fact that it was actually used for purposes of navigation to some extent. The words of the grant in the deed mentioned, therefore, would not convey any land beyond high-water-mark of the creek, for there Benson's right of property in land ended.

But, from the facts disclosed by the proofs, I think that the grantor should not be deemed to have intended the convey-

ance of the whole stream which was known as Harlem creek. He describes the property granted as his "estate to the north of the mill-pond," and including "the mill-stream and mill and mill-pond, with all its privileges and appurtenances, and to shut the mill-dam at the south side of said mill-pond." His language is to be construed, not as conveying the stream known as Harlem creek, but only the use of, or easement in its waters for mill purposes, as the same had been acquired by him and developed, by the construction of the dam, the sluice-ways, the connecting canals, etc. I think that the right "to shut the mill-dam," mentioned in the deed, negatives the idea of any intended conveyance by the grantor of the whole creek. It forcibly suggests what the grantor covered by his language. The control of the mill-dam was the control of the mill-stream, or water-power, which he had created, and by which the mill was operated; and, viewed in that light, the grant is seen to be but the conveyance of water privileges, without which the mill property would be less valuable.

The appellant, however, argues that Peter B. Benson, the grantee in the deed mentioned, went into possession of the property in controversy, which lay to the south of the creek, and urges that proof of that fact is found in the testimony of Mrs. Van Arsdale, an aged woman and a daughter of Peter B. Benson, who was called as a witness. The learned trial judge found as a fact that Peter B. Benson had possession of the premises described in the complaint, but I think the evidence does not sustain that finding. The act of possession relied upon was the cutting of the salt-meadow grass on both sides of the creek, which the testimony of Mrs. Van Arsdale, the witness referred to, was supposed to prove. Her testimony is not at all clear; but what can be fairly gathered from it is that her family cut the grass on the borders of the mill stream or sluice-ways. She says that they did not cut on the New York (or south) side of the creek. While it is difficult to understand her testimony on this point, it is not possible to find from it, as a fact, that her father ever had possession of any lands south of the creek, and, consequently, of any of

the land in controversy. I do not think that an occasional resort to lands, such as what was attempted to be shown in this case in the cutting of grass by Peter B. Benson, would be sufficient to prove occupancy or possession, in the absence of a deed describing and including the land where such an act was performed.

It is not proven here that there was any actual occupancy, or *pedis possessio*, which was either definite or notorious; and without color of title in, or occupancy by plaintiff's grantors, his claim utterly fails. In my judgment the plaintiff has not proven any foundation or origin of title in appropriation or possession, as he has failed to prove that the premises were ever granted to Peter B. Benson, from whom he claims to derive his title. The rule is well settled by frequent decisions that in an action of ejectment the plaintiff must recover upon the strength of his own title, and he cannot rely on any supposed or actual weakness of his adversary's title. The fact of title in, or of possession by those under whom the plaintiff claims must be shown, otherwise he has failed to show any cause of action, and, consequently, any reason for requiring the defendant to defend his possession.

The opinion at General Term was well expressed, and any further elaboration of our views is not called for by the brief of the appellant's counsel.

The order of the General Term, appealed from to this court, should be affirmed, with costs, and under the stipulation contained in the notice of appeal, judgment absolute is awarded against the appellant.

All concur.

Order affirmed and judgment accordingly.