The **CANADIAN ST. REGIS BAND OF MOHAWK INDIANS, et al., Plaintiffs,**

v.

The **STATE OF NEW YORK, et al., Defendants.**

The **CANADIAN ST. REGIS BAND OF MOHAWK INDIANS, et al., Plaintiffs,**

v.

The **STATE OF NEW YORK, et al., Defendants.**

Nos. 82–CV–783, 82–CV–1114.

United States District Court, N.D. New York.

Nov. 4, 1983.

See also, 97 F.R.D. 453.

Sonosky, Chambers, Sachse & Guido, Washington, D.C., Vaughn Aldrich, Hogansburg, N.Y., for plaintiffs; Kenneth J. Guido, Jr., Harry R. Sachse, Washington, D.C., of counsel.

Robert Abrams, Atty. Gen., Albany, N.Y., Lew A. Millenbach, Asst. Atty. Gen., Hiscock, Lee, Rogers, Henley & Barclay, Syracuse, N.Y., Snider & Snider, Massena, N.Y., Dollinger Gonski & Grossman, Carle Place, N.Y., Jordan M. Newman, Asst. Gen. Counsel, State of N.Y. Power Authority, New York City, Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., Richard Beal, Indian Claims Sec., U.S. Dept. of Justice, Washington, D.C., Fred Bush, St. Lawrence Seaway Development Corp., Massena, N.Y., Kernan & Kernan, Utica, N.Y., Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., for defendants; Jan R. Farr, Syracuse, N.Y., Thomas Snider, Massena, N.Y., Leslie A. Foodim, Joseph A. Pavone, Asst. U.S. Atty., Syracuse, N.Y., Andrea Lynch, Utica, N.Y., John K. McCormick, Buffalo, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

These two actions were brought by the Canadian St. Regis Band of Mohawk Indians and seven individuals who allege mem-

bership in either the Canadian St. Regis Band or the American St. Regis Mohawk Tribe.

In 82–CV–783, plaintiffs seek a declaration that they own and are entitled to possess some 12,000 acres of land in northern New York State; they also seek trespass damages for the approximately 130–170 years during which they have been out of possession. Plaintiffs contend that the subject land was reserved to the Indians of the Village of St. Regis in the Treaty with the Seven Nations of Canada, 7 Stat. 55 (1796), and is subject to a restraint against alienation under the Nonintercourse Act, 25 U.S.C. § 177. In addition to their claim directly under the Nonintercourse Act, plaintiffs also assert a claim based on 42 U.S.C. § 1983, alleging the deprivation, under color of state law, of rights, privileges and immunities secured under the Constitution and laws of the United States.

The second action, 82–CV–1114, is a suit to recover possession of certain islands in the St. Lawrence River, along with trespass damages for the period of dispossession and other relief. Plaintiffs allege that, until 1814, these islands were considered part of British North America, and that Indian ownership had been recognized by the British. The islands were transferred to the United States as a result of a boundary survey pursuant to the Treaty of Ghent, 8 Stat. 218 (1814), which ended the War of 1812. Plaintiffs contend that New York State subsequently disposed of the islands in violation of the Treaty of Ghent and the Nonintercourse Act. As in 82–CV–783, plaintiffs also allege a deprivation, under color of state law, of their rights, privileges and immunities secured under the Constitution and laws of the United States. As a third claim, plaintiffs contend that the flooding of certain land by defendants St. Lawrence Seaway Development Corp. and/or the Power Authority of the State of New York amount to a taking in violation of the Fifth Amendment.

At this juncture, plaintiffs seek certification, in both actions, of a plaintiff class comprised of "all descendants of the Indians of the Village of St. Regis." The seven individual plaintiffs are to represent the class. Plaintiffs contend that the criteria of Rule 23, Fed.R.Civ.P. are satisfied. Turning first to the prerequisites in Rule 23(a) they maintain that (1) the class includes some 6,000 individual members of the Canadian Band and American Tribe, and is thus too numerous to make joinder of all the members practicable; (2) questions concerning, *inter alia*, the ownership of the land and the validity of the conveyances to or transfers by the state are questions of law and fact common to the class; (3) the claims of the representatives, three of whom are members of the Canadian Band and four of whom are members of the American tribe, are typical of the claims of the class; (4) the class representatives intend to vigorously press the class claims, and their attorneys are competent and experienced, therefore the interests of the class are adequately protected.

Turning next to the further requirements of Rule 23(b), plaintiffs contend that the actions fall within categories (b)(2) and (b)(3):

Rule 23(b)...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The briefs filed by the attorney general, the ten collectively represented defendants, the Power Authority of the State of New York, and the United States Attorney on behalf of the St. Lawrence Seaway Development Corporation raise a number of objections to class certification. Each, however, emphasizes one argument in particular: individual Indians lack standing to assert these tribal claims.

 The concept of standing embraces both constitutional limitations on the power of federal courts and prudential limitations on the exercise of that power. *Warth v.*

*Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). To satisfy the minimal constitutional requirements of Article III, a plaintiff must be able to show "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," that the injury "fairly can be traced to the challenged action," and that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). To satisfy the prudential standing limitations that the Supreme Court has recognized, "the plaintiff must generally assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties;" and the plaintiff's complaint must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge, supra,* 454 U.S. at 474–75, 102 S.Ct. at 759–60.

When plaintiff's standing is placed in issue, the court is concerned not with "the merits of plaintiff's contention that particular conduct is illegal", but whether the plaintiff is the proper party to assert that claim. *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206; see *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37–38, 96 S.Ct. 1917, 1923–1924, 48 L.Ed.2d 450 (1976). However, the nature of the claim can be determinative of the standing issue. As the Supreme Court explained in *Warth v. Seldin:*

> The actual or threatened injury required by Article III may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing...." (citations omitted). Moreover, the source of the plaintiff's claim to relief assumes critical importance with respect to prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of courts in resolving public disputes. *Essentially, the standing question in such cases is whether the constitutional or statutory provi-sion on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.*

422 U.S. at 500, 95 S.Ct. at 2206 (emphasis added).

An individual plaintiff who lacks standing cannot seek relief on behalf of himself or on behalf of the class he purports to represents. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Nor does banding together a group of individuals who lack standing confer that attribute upon the class or its representatives. See *Simon v. Eastern Ky. Welfare Rights Org., supra,* 426 U.S. at 40 n. 20, 96 S.Ct. at 1925 n. 20; see also *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 694 (E.D.Pa.1973); *Thomas v. Clarke,* 54 F.R.D. 245, 249 (D.Minn.1971); *Pacific Inter-Club Yacht Ass'n v. Morris,* 197 F.Supp. 218, 223 (N.D. Cal.1960). Thus, if the individual descendants of the Indians of the Village of St. Regis lack standing to raise the claims in the complaint, the motion for certification of a plaintiff class must be denied. See *McElhaney v. Eli Lilly & Co.,* 93 F.R.D. 875, 878 (D.S.D.1982).

In each of their complaints, plaintiffs allege that the subject lands are owned by "the Indians of the Village of St. Regis." Thus phrased, the claims could arguably be read to assert some form of non-tribal collective ownership of the subject lands. However, in the course of briefing this motion, plaintiffs specified that "the lands in question are tribal lands," *Plaintiffs' Reply Memo* at 4 n. 3. Accordingly, "whatever title the Indians have is in the tribe, and not in the individuals, although held by the tribe for the common use and benefit of all members." *Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 665, 99 S.Ct. 2529, 2536, 61 L.Ed.2d 153 (1979), quoting *United States v. Jim,* 409 U.S. 80, 82, 93 S.Ct. 261, 263, 34 L.Ed.2d 282 (1972), in turn quoting, *Cherokee Nation v. Hitchcock,* 187 U.S. 294, 23 S.Ct. 115, 47 L.Ed. 183 (1902). See also, *Oneida Indian Nation of New York v. County of Oneida,* 414 U.S. 661, 667, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974).

**1534**

■ Under elementary common-law principles, a plaintiff suing in ejectment must establish his *own* title to the land; he may not rely on the weakness of the defendant's title or the superiority of a third person's title. See *Roberts v. Baumgarten,* 110 N.Y. 380, 18 N.E. 96 (1888); 28 C.J.S. Ejectment § 11 at 858 (1941 ed.). This rule, preventing the⁶ assertion of a *jus tertii* —the better title of a third party—is in essence a rule of *standing.* See Wright Miller & Cooper, 13 *Federal Practice & Procedure:* Jurisdiction § 3531 at 205 (1975 ed.). To the extent that the individual plaintiffs purport to maintain an ejectment action under federal common law, see *Oneida Indian Nation of New York v. County of Oneida,* 719 F.2d 525 at 530–32 (2d Cir.1983); *Cayuga Indian Nation of New York v. Cuomo,* 565 F.Supp. 1297, 1316–20 (N.D.N.Y.1983), the individual plaintiffs lack standing because they lack title.

However, the complaints are framed more in terms of a private right of action under the Nonintercourse Act than of a common-law ejectment action, and common-law principles are not dispositive of the standing issue. See *Oneida Indian Nation of New York v. County of Oneida,* supra at 532–37; *Cayuga Indian Nation of New York v. Cuomo,* supra at 1321–26.

Viewing the claims as arising under the Nonintercourse Act, it appears to the court that the individual plaintiffs possess the characteristics necessary to meet the minimal standing requirements of Article III. Taking the allegations of the complaint as true, *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206, it follows that the descendants of the Indians of the Village of St. Regis have (1) suffered some actual injury (the loss of those benefits of tribal land ownership that would have inured to tribal members); (2) the injury was a result of the putatively illegal conduct of the defendants (the possession of tribal land under color of title that is invalid under federal law); and (3) a favorable decision by this court is likely to redress the injury (restoration of possession would enable tribal members to enjoy various benefits with respect to the subject lands). See *Mashpee Tribe v. Watt,* 542 F.Supp. 797, 800 (D.Mass.1982).

■ Nevertheless, the court concludes that the prudential limitations on standing bar these plaintiffs from asserting the claims in the complaint, primarily for the reason that the Nonintercourse Act "does not grant persons in the plaintiff[s'] position a right to judicial relief." *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206.

The Nonintercourse Act was enacted "for the protection of Indian tribes as beneficiaries." *Oneida Indian Nation of New York v. County of Oneida, supra,* at 532 (2d Cir.1983).[1] As the Court of Appeals for

---

1. In *Oneida Indian Nation of New York v. County of Oneida,* supra, the Court of Appeals for the Second Circuit held that "the Oneidas had a private right of action to enforce the Trade and Intercourse Act of 1793," at 537, and that "the Oneidas may assert a federal common law action to recover damages for the Counties' wrongful possession of their land." *Id.* at 530. This court had previously arrived at similar conclusions in *Cayuga Indian Nation of New York v. Cuomo,* 565 F.Supp. 1297, 1315–1326 (N.D.N.Y.1983).

There is language in both decisions that, read out of context, could be taken as support for the proposition that an implied right of action under the Nonintercourse Act or a common law ejectment claim could be asserted by individual members of a tribe. Thus, in *Oneida,* supra, the court referred to the rights of "the Oneidas" rather than specifying the various tribal plaintiffs. Moreover, in its discussion of the Nonintercourse Act, the Second Circuit more than once stated that the intended beneficiaries of the Act were "Indians". *E.g.,* at 533, 536–37. Similar comments appear in *Cayuga. E.g.,* 565 F.Supp. at 1323–24.

Nevertheless, *Oneida* and *Cayuga* by no means recognize standing or a private right of action by individual Indians. In neither instance were the courts faced with the question of individual standing or an individual right of action; as a result the terms "Indians" and "tribes" were frequently used interchangeably. However, both opinions reflect an awareness that only tribal rights are protected by the Act. As the *Oneida* court emphasized at the outset of its discussion of the implied cause of action issue, "[i]t is beyond dispute that the Nonintercourse Acts were enacted for the protection of the Indian tribes as beneficiaries." At 532. Similarly, in *Cayuga,* this court began its discus-

the First Circuit recently emphasized, in the course of affirming the dismissal of a Nonintercourse Act claim brought by individual Indians:

This court has held that the INA [Indian Nonintercourse Act] was designed to protect the land rights only of *tribes;* that the INA therefore granted a cause of action to tribes; and that individual Indians could not assert INA rights on their own behalf.

*James v. Watt,* 716 F.2d 71 at 72 (1st Cir.1983) (emphasis in original).

Indeed, because the Nonintercourse Act protects only tribal land rights, and not individual Indian land rights, the first element of a prima facie case based on a violation of the Act is a showing by the plaintiff that "it is or represents an Indian 'tribe' within the meaning of the Act." *Epps v. Andrus,* 611 F.2d 915, 917 (1st Cir.1979); *Oneida Indian Nation of New York v. County of Oneida,* 434 F.Supp. 527, 537 (N.D.N.Y.1977). In instances where plaintiffs have been unable to allege or prove tribal status, their claims have been dismissed on the ground that they lacked standing. See *Epps v. Andrus, supra; Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575 (1st Cir.1979) ("Mashpee I").

Plaintiffs contend that *Epps* and *Mashpee I* involved the question of whether the Nonintercourse Act protects individually held land; that although the First Circuit used the term "standing", it actually meant that the complaints failed to state a claim because only tribal lands are protected by the Act. Thus, in plaintiffs' view, neither case may be cited for the proposition that individual Indians lack standing to assert a claim that tribal land was alienated in violation of the Nonintercourse Act.

This court does not read *Epps* or *Mashpee I* that narrowly. In *Epps,* plaintiffs initially brought suit as individual descendants of one family of Chappaquiddick Indians, to recover a specific parcel of land that had been allocated to that family when the Chappaquiddick reservation was parti-

tioned in the early 19th century. Plaintiffs claimed that both the partitioning and the subsequent alienation of the parcel were invalid under the Nonintercourse Act. However, in an amended complaint, plaintiffs asserted a class action on behalf of other individual heirs and successors of the tribe. *Id.* at 917. Thus, the claim, as amended, embraced the full measure of individual rights in the tribal land.

The First Circuit affirmed the dismissal of the suit, on the grounds, *inter alia,* that plaintiffs lacked *standing:*

As the courts have stated repeatedly, claims on the part of individual Indians or their representatives are not cognizable in federal courts under the Indian Trade and Intercourse Act. . . . In short, *since plaintiffs are not suing as a tribe, they do not have standing to bring this claim;* and, because plaintiffs failed to allege tribal status when these conveyances were made, they have failed to state a claim upon which relief can be afforded under the Nonintercourse Act.

*Id.* at 918 (citations omitted; emphasis added).

Although it did not conduct a full-fledged standing analysis under *Warth v. Seldin et al.,* the First Circuit nevertheless did not use the term "standing" loosely. It distinguished between the standing issue and the merits of the complaint, and found that plaintiffs failed on both grounds.

In *Mashpee I* the plaintiffs did allege tribal status within the meaning of the Nonintercourse Act and sought recovery of tribal lands. The district court dismissed the action on the merits after a jury found that they were neither a tribe when the land was alienated, nor when the suit was filed. In affirming the dismissal, the First Circuit again expressly held that plaintiffs lacked standing, because they were not a tribe when the suit was filed:

It is undisputed that if plaintiff was not a tribe in 1976 it lacked standing to bring this suit, and if not a tribe at the critical time in the 19th century, it was not protected by the Act.

sion of the statutory purpose by stating, "[t]here can no longer be doubt but that Indian tribes

are especial beneficiaries of the Nonintercourse Act." 565 F.Supp. at 1323.

*Id.* at 579. Moreover, the court made the point that the need to prove this crucial element goes both to standing and to the merits of the suit:

> Plaintiff must prove that it meets the definition of "tribe of Indians" as that phrase is used in the Nonintercourse Act *both* in order to establish any right to recovery *and* to establish standing to bring the suit.

*Id.* at 581 (emphasis added).

■ Thus, notwithstanding plaintiff's arguments to the contrary, *Epps* and *Mashpee I* are quite properly read for the proposition that individual Indians lack standing to assert claims under the Nonintercourse Act, whether the claims are for individual or tribal interests in the alienated lands.

There remains, of course, the possibility that *Epps* and *Andrus* are incorrect. In *Mashpee Tribe v. Watt,* 542 F.Supp. 797 (D.Mass.1982) ("*Mashpee II*") the district court was faced with the question of whether the dismissal in *Mashpee I* was on the basis of standing, which is a jurisdictional limitation, or on the merits, and thus entitled to *res judicata* effect. Judge Skinner re-examined the standing issue presented in *Mashpee I,* and concluded that the individual plaintiffs in *Mashpee I* met both the constitutional and prudential requirements for standing, despite the finding that they were not a tribe, and despite the language in the Court of Appeals decision to the contrary. The court accordingly held that the dismissal in *Mashpee I* "operated as an adjudication on the merits" and could preclude relitigation of the issues decided in that case (but for policy reasons, the application of *res judicata* was stayed). *Id.* at 800. In plaintiffs' view, *Mashpee II* supports the proposition that the individual tribal members have standing to raise a Nonintercourse Act claim, and that any challenge with respect to the existence or representation of a tribe touches the merits

of the claim and must be made after class certification.

Several factors weigh against following *Mashpee II* in this instance. First, as discussed above, the more authoritative decisions in *Epps* and *Mashpee I* expressly held that plaintiffs who fail to allege or establish tribal status lack standing to raise a claim under the Nonintercourse Act; the First Circuit has not repudiated that analysis. Second, the *Mashpee II* decision gives inadequate attention to certain prudential aspects of the standing doctrine; specifically, the question of whether the Nonintercourse Act may properly be understood as granting persons in plaintiff's position a right to judicial relief, *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206; or whether the individual Indians are impermissively asserting the rights of a third party, i.e., the tribe. *Id.* at 499, 95 S.Ct. at 2205.

Finally, in an important respect, *Mashpee II,* is distinguishable on its facts. In *Mashpee II,* there was no tribal entity, so the claim under the Nonintercourse Act could be raised, if at all, only by the individual descendents of the Mashpee Indians who conveyed the land. In the instant case there are at least two tribal entities that are, allegedly, successors in interest to the tribe that once possessed the subject lands. Insofar as standing principles are designed to assure that the plaintiff is the proper party to present the claim for resolution by the court, and such principles "reflect a due regard for the autonomy of those persons likely to be most directly affected by a judicial order," *Valley Forge, supra,* 454 U.S. at 473, 102 S.Ct. at 759, the descendants of the Village of St. Regis have a weaker claim of standing than that of the individual Indians in *Mashpee II, Cf,* Wright, Miller & Cooper, 13 *Federal Practice & Procedure: Jurisdiction,* § 3531 at 211 (1975 ed.).[2]

2. Wright & Miller comment as follows:
 When the person whose rights are invoked is clearly in a position to assert them effectively, there may be some advantage to a rule denying standing even to a party in some relationship with the person. The fact that a nonparty has not asserted his own rights may indicate that he views them differently, or for some reason believes that it is better not to assert them in view of the consequences likely to be entailed. This residual concept might conveniently be thought of as a "best plaintiff" rule.

The discussion in *Mashpee II* does not, therefore, alter this court's view that individual descendants of the Village of St. Regis lack standing to assert a claim under the Nonintercourse Act. The Act protects only tribal interests in land, *James v. Watt, supra* at 72; therefore, only those plaintiffs who are or represent a tribe have standing to assert that the Act has been violated. *Epps v. Andrus, supra; Mashpee Tribe v. New Seabury Corp., supra.*

For related reasons, it appears to the court that the individual plaintiffs have run afoul of the prudential limitation that "a plaintiff must assert its own legal rights, and cannot rest its claim to relief on the legal rights or interests of third parties." *Valley Forge, supra,* 454 U.S. at 474, 102 S.Ct. at 759, citing *Warth v. Seldin, supra,* 422 U.S. at 499, 95 S.Ct. at 2205. These individuals seek to press the claim that tribal lands were conveyed or otherwise alienated in violation of a federal law that restricts the alienation of tribal land. The legal rights and interests are those of the tribe, and must be asserted by it.

In their reply brief, plaintiffs contend that the defendants have interfered directly with the plaintiffs' individual interests, as tribal members, in the subject lands. Those impaired individual interests include hunting, fishing, and occupancy rights. They note that the occupancy rights of tribal members are protected by the due process provision of the Indian Civil Rights Act, 25 U.S.C. 1302(8). *Crowe v. Eastern Bank of Cherokee Indians, Inc.,* 506 F.2d 1231 (4th Cir.1974); *Johnson v. Lower Elwha Tribal Community,* 484 F.2d 200 (9th Cir.1973).

Accepting plaintiffs' premise that such allegations can be extrapolated from the complaints in these actions, the court remains of the view that the plaintiffs lack standing. Whatever rights or benefits the individual plaintiffs enjoy by virtue of tribal membership are distinct and separate from the rights secured by the Nonintercourse Act. That Act "protect[s] the land rights only of *tribes*". *James v. Watt, supra.* at 73.

13 *Federal Practice & Procedure* § 3531 at 211–12.

To be sure, the loss of part of the St. Regis Mohawk tribal lands resulted in a corresponding loss of tribal members' rights of occupancy, hunting, and fishing. As recognized previously, the loss of such derivative benefits constitutes "actual injury" to the individual plaintiffs, and satisfies one element of the constitutional standing doctrine. However, this injury must be distinguished from the legal claims raised in the complaint, which assert the nonalienability of tribal land under the Nonintercourse Act. Though injured by the loss of tribal land, the individual plaintiffs are not a tribe and do not represent a tribe; they lack standing to assert the claims that tribal land was alienated in violation of the Act.

Plaintiffs cite *Blake v. Arnett,* 663 F.2d 906 (9th Cir.1981) as an example of a case where two individual Indians were deemed to represent a class of tribal members to assert hunting and fishing rights founded on their tribal status. In *Blake,* however, the Indians were contending that hunting and fishing rights were specifically reserved to them when the tribal land was conveyed. Thus, they were asserting their own legal claim, and not a claim which belonged exclusively to the tribe. The holding in *Blake,* therefore, does not support the proposition that individual Indians have standing to assert a tribal Nonintercourse claim, in order to secure those individual rights that accompany tribal membership.

The court holds that the individual descendants of the Indians of the Village of St. Regis lack standing to assert claims based on violations of the Nonintercourse Act. It follows that they also lack standing to assert the alternative claims for relief set forth in the complaints. The claims under 42 U.S.C. § 1983 are dependent upon plaintiffs' standing to invoke the substantive rights afforded by the Nonintercourse Act. *Cf. Mashpee Tribe v. Watt,* 542 F.Supp. 797, 806 (individual Indians have no claim under the Nonintercourse Act, and therefore have no claim under § 1983).

Similarly, standing to raise a claim that the flooding of the tribal lands constituted a taking in violation of the Fifth Amendment is dependant upon standing to invoke the Nonintercourse Act to establish a present ownership interest. Finally, though the court takes no position at this time on whether a *tribe* has standing to assert a claim under the Treaty of Ghent, it is quite clear that individual members of the tribe may not do so. The Treaty of Ghent provided, in essence, that the United States and Great Britain would honor the property rights of those in possession of any of the islands before the War of 1812 despite any transfer of sovereignty. 8 Stat. 218, 222. Since such property rights belonged to the tribe, *Wilson v. Omaha Indian Tribe, supra,* 442 U.S. at 665, 99 S.Ct. at 2536, if there is standing on the part of any third party to enforce the treaty, it would be on the part of the tribe.

In addition to opposing certification of a plaintiff class on the ground that the individual plaintiffs lack standing, defendants also contend that the plaintiffs do not satisfy the requirements of Rule 23, Fed.R. Civ.P. in other respects, i.e., the proposed class is inadequately defined; the proposed class is not so numerous as to make joinder of all members impracticable; there is a conflict in interest between the members of the Canadian Band and the American Tribe; the claims of the proposed representatives are not typical of the claims of the class; the proposed representatives cannot fairly and adequately represent the interests of the class; certification under Rule 23(b)(2) is improper because the claim is primarily for monetary relief; certification under Rule 23(b)(3) is improper because a class action is inferior to a suit brought by the tribe itself; certification would usurp the authority and violate the sovereign immunity of the American St. Regis Mohawk Tribe. The court's holding on the standing issue obviates the need to address these contentions.

█ In conclusion, the court finds that the individual descendants of the Indians of the Village of St. Regis lack standing to assert the non-alienability of their tribal lands under the Nonintercourse Act and the Treaty of Ghent. This determination not only necessitates the denial of plaintiffs' motion for certification of a plaintiff class, but the dismissal of all claims by the individual plaintiffs as well.

█ It is the obligation of the trial court to notice, on its own, want of subject matter jurisdiction. *Arnold v. Troccoli,* 344 F.2d 842, 844 (2d Cir.1965); see Wright & Miller. 5 *Federal Practice & Procedure* § 1350 at 545 (1969 ed.). The concept of standing—even its prudential dimension—is a limitation on federal court jurisdiction. See *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Warth v. Seldin, supra,* 422 U.S. at 498, 95 S.Ct. at 2204. Where standing is lacking, the complaint must be dismissed. *Warth v. Seldin, supra,* 422 U.S. at 501–02, 95 S.Ct. at 2206–07. Although in this instance the issue of standing has arisen in the context of a class certification motion, and the defendants have not cross moved to dismiss, the issue has nevertheless been briefed, argued, and decided by the court. That determination signifies that the court cannot exercise jurisdiction over the claims of the individual plaintiffs.

Therefore, plaintiffs' motions for certification of a plaintiff class are denied; and to the extent that the complaints assert claims by individual plaintiffs, they are dismissed for want of jurisdiction.

IT IS SO ORDERED.