WILLIAM D. MILLS, as Administrator, etc., Appellant, v. JOSEPH HUSSON, as Trustee, etc., et al., Respondents.

140    99
150    93
140    99
154   258
154   324
154   427
140    99
168  ¹175

The provision of the Statute of Uses and Trusts (1 R. S. 730, § 67), as amended in 1875 (Chap. 545, Laws of 1875), which declares that "where an estate has been conveyed to trustees for the benefit of creditors * * * such trust shall be deemed discharged at the end of twenty-five years from the creation of the same," and the estate conveyed, not granted or conveyed by the trustee, shall revert to the grantor or person claiming under him, etc., "to the same effect as though such trust had not been created," applies to personal as well as real estate.

The amendment also applies to assignments previously executed, and is constitutional.

Under the act of 1885 (Chap. 380, Laws of 1885), conferring upon the Supreme Court and its justices the jurisdiction conferred upon County Courts and county judges by the General Assignment Act (Chap. 466, Laws of 1877), and the amendments thereto, the Supreme Court has concurrent jurisdiction with the County Court of an action to compel an assignee for the benefit of creditors to account.

In such an action it appeared that the assignment was executed in 1855; defendant was appointed assignee in 1868 in place of the original assignee, deceased; that there came to, and still remained in, his hands as such assignee about $4,000. Plaintiff produced in evidence an instrument under seal, executed and acknowledged by the assignor in 1884, by which, for a consideration expressed, he granted and assigned to plaintiff as administrator, with the will annexed of the deceased assignee, all claims and causes of action which he (the assignor) then had or should thereafter acquire against defendant "as trustee or otherwise of the assigned estate," and all his right and interest in the assigned property. *Held*, that every right of the assignee capable of transfer passed to plaintiff by the instrument; that under it the latter had a sufficient interest to enable him to maintain the action, and he was entitled to the relief sought.

(Argued October 9, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 1, 1892, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term, and also affirmed an order denying an application by plaintiff to open the cause for further proofs.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Fisher A. Baker* for appellant. The fund now held by Mr. Husson is to be regarded as consisting of both real and personal property. (*Mills* v. *Mills*, 28 Barb. 454; Laws of 1875, chap. 545.) Section 67 of the Statute of Uses and Trusts applies to the entire fund, whether it be regarded as real, personal or mixed. (*Kittell* v. *Osborn*, 4 T. & C. 48; *Cranston* v. *Plumb*, 54 Barb. 59, 75, 76; *Watkins* v. *Vrooman*, 51 Hun, 181; *Cook* v. *Lowry*, 95 N. Y. 108; *In re Crossman*, 113 id. 503; *Everitt* v. *Everitt*, 29 id. 72; *Bliven* v. *Seymour*, 88 id. 478; *Van Brunt* v. *Van Brunt*, 111 id. 179, 187; *Graff* v. *Bonnett*, 31 id. 13; *Williams* v. *Thorn*, 70 id. 272; *Cutting* v. *Cutting*, 86 id. 546; *Tilden* v. *Green*, 130 id. 74; *N. Y. L. Ins. Co.* v. *Livingston*, 133 id. 127; *Morse* v. *Gould*, 11 id. 288; *People* v. *Bacon*, 99 id. 279; *Hetzel* v. *Barber*, 69 id. 1, 13; *Sharpsteen* v. *Tillou*, 3 Cow. 551; *Jackson* v. *Jansen*, 6 Johns. 74; *O'Brien* v. *Mooney*, 5 Duer, 54; *Peck* v. *Brown*, 26 How. Pr. 374; *Nicoll* v. *Walworth*, 4 Den. 388; *Lathrop* v. *Dunlop*, 4 Hun, 215; *Kip* v. *Hirsch*, 103 N. Y. 572.)

*Dennis McMahon* for respondent. As transferee of the assignor, J. Doremus Mills, plaintiff acquired no rights whatever under the act of 1875 (Chap. 545, p. 618). (*McCahill* v. *Hamilton*, 20 Hun, 388; *Kip* v. *Hirsch*, 18 Abb. [N. C.] 167; 103 N. Y. 565.)

O'BRIEN, J. The plaintiff, claiming to represent a creditor of Jacob D. Mills, who made an assignment for the benefit of creditors, and as the assignee of the reversionary interest in the assigned estate, sought to compel an accounting by the defendant, as the substituted assignee or trustee under the assignment, and has failed substantially upon the ground that he did not establish any claim against or interest in the assigned estate.

Jacob D. Mills made an assignment for the benefit of cred-itors to William Dolsen, his father-in-law, June 11, 1855. The assignee was directed to pay certain preferred debts described in the assignment, and among them " all indebtedness or sum or sums of money due, or to grow due, owing by said J. D. Mills, or for which he is in anywise liable to William Dolsen and Charles B. Hart, respectively, and for which they are respectively liable on account of said J. D. Mills." Dolsen, the assignee, entered upon the performance of the duties of the trust, collected about $4,000, which he disbursed, except $529.58, and died in January, 1865, leaving an estate of about $30,000.

An inventory of the personal estate was filed December 6, 1866, by his daughter, Phebe A. Mills, the wife of the assignor, who had been appointed administratrix, and it contains no claim or obligation against the assignor. In January, 1872, the plaintiff was appointed administrator *de bonis non* of Dol-sen's estate, and on March 26, 1868, the defendant was appointed assignee of Mills in place of Dolsen, deceased, and there came to his hands as such assignee as part of the assigned estate, applicable to the payment of debts, about $4,000, which still remains in his hands, never having been distributed. The plaintiff brought this action to compel the defendant Husson, as substituted assignee, to account and make distribution of the fund in his hands. Such of the preferred creditors as were then living and the personal representatives of those that had died, or the heirs or next of kin, were also made parties defendant, all of whom, except the assignee, failed to answer. The assignee by his answer put in issue many of the material allegations of the com-plaint, and set up the Statute of Limitations and other defenses, and denied that the plaintiff, as creditor or trans-feree of the assignor, had any right, title or interest in the estate or assets, or any right to call him to account. On the trial the plaintiff produced two written instruments in sup-port of his claim : (1) A promissory note of $10,000, signed by Jacob D. Mills, the assignor, and another person, bearing

date March 16, 1854, whereby, twelve months after date, they jointly and severally promised to pay to William Dolsen, the assignee, ten thousand dollars, value received, with semi-annual interest. The note on its face recites that it was given under the hands and seals of the makers, and was in fact sealed. (2) An instrument under seal, and acknowledged January 12, 1884, executed by Jacob D. Mills, whereby, for considerations expressed, he did grant, assign and transfer to his son, the plaintiff, as administrator with the will annexed of William Dolsen, deceased, and his successors and assigns forever, all accounts, dues, debts, claims, rights and demands, actions and causes of action at law or in equity which he then held or might thereafter acquire against the defendant, as trustee or otherwise of the assigned estate, and all his right, title and interest in or to the property included in the assignment with authority to recover the property by action at law or in equity or otherwise. The courts below have held that, considering the long period of time from the date of the note to its presentation as a claim against the assigned estate, the character of the proof as to the manner in which it came to the plaintiff's possession and other circumstances, some of which have been referred to, the note was not evidence of a valid claim in favor of the plaintiff against the assignee. It was also held that, as there was no property but money in the hands of the assignee, no interest in that was acquired by the plaintiff under the transfer to him by Jacob D. Mills, the assignor, and the complaint was dismissed.

The fund in the hands of the defendant represented in part at least the proceeds of real estate which belonged to the assignor, converted into money by the assignee. Assuming for the purposes of this appeal that the plaintiff's claim under the note has been correctly disposed of as a question of fact, his right under the transfer remains to be considered. The sixty-seventh section of the statute concerning uses and trusts, as amended by chapter 545 of the Laws of 1875, reads as follows:

"§ 67. When the purposes for which an express trust shall have been created shall have ceased, the estate of the trustees shall also cease. And where an estate has been conveyed to

trustees for the benefit of creditors, and no different limitation is contained in the instrument creating the trust, such trust shall be deemed discharged at the end of twenty-five years from the creation of the same; and the estate conveyed to trustee or trustees, and not granted or conveyed by him or them, shall revert to the grantor or grantors, his or their heirs or devisees, or persons claiming under them, to the same effect as though such trust had not been created."

The power conferred upon the assignee was to convert the assigned property into money and to distribute the same *pro rata* among certain persons named. After the lapse of nearly forty years the changes produced by death have rendered it difficult and perhaps impossible to execute this power, and in some analogous cases it has been held that under such circumstances the trust became extinct. (*Sharpsteen* v. *Tillou*, 3 Cowen, 661; *Hetzel* v. *Barber*, 69 N. Y. 13.) In this case, however, the trust was clearly discharged by force of the statute at the end of twenty-five years, and the property reverted to the assignor, and through him to the plaintiff, under the transfer, unless, as the learned counsel for the defendant claims, the statute relates solely to real estate. A construction of the statute which discharges the trust at the end of twenty-five years as to real estate, but preserves it indefinitely as to personalty, must rest upon the language alone, as no support for that view can be found in considerations based upon reason or justice. The language is that "such trust shall be deemed discharged at the end of twenty-five years from the creation of the same." This means the whole trust and not a part of it. It refers to all the property embraced in the trust, and not to a part of it only. It refers to a case where all the assigned property was personalty as well as to the case of an assignment where the property is all or in part realty. It is true that the words used are all apt to describe real estate, but they are comprehensive enough to include personal also, and there is no reason to suppose that all the property of every kind was not within the purpose of the act or the legislative intent. It applies when an *estate* has

been conveyed to trustees for the benefit of creditors, and that word in the law governing such assignments is used to describe the assigned property without regard to its character. So that even if we had no other guide in the solution of the question except considerations drawn from the language employed in framing the amendment, the nature of the question which we must presume was present to the legislative mind, the purpose that was evidently in view and the evil to be corrected, it would be difficult to say with any great degree of confidence that personal property was not intended to be included in the operation of the act.

This conclusion is fortified by the decisions of the courts in analogous cases in which it has been quite uniformly held that the rules governing estates or interests in lands, whether founded upon statutes or upon general principles of law, should, as far as practicable, be applied to estates or interests of a like character in personal property. The statute itself declares that certain limitations of future or contingent interests in land shall also be applied to personal property. (1 R. S. 773, § 2.) This court has held that the provision of the statute in regard to estates in real property (1 R. S. 726, § 40), providing that when, in consequence of a valid limitation of an expectant estate, there shall be a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate, applies to personal property. (*Cook* v. *Lowry*, 95 N. Y. 103, 108; *Delafield* v. *Shipman*, 103 id. 463.)

The statute declaring that every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be a joint tenancy, applies to personal estate. (1 R. S. 727, § 44; *Everitt* v. *Everitt*, 29 N. Y. 72; *Bliven* v. *Seymour*, 88 id. 478; *Van Brunt* v. *Van Brunt*, 111 id. 179, 187.)

In *Graff* v. *Bennett* (31 N. Y. 13), a creditor sought to reach the income of a fund for the benefit of the debtor under

a bequest in a will.   It was held that the sixty-third section of the Statute of Uses and Trusts, which provides that no person, beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest applied to a trust of personal property.   This result was reached by the application of a principle thus stated by the learned judge who expressed the views of the majority of the court: "Even if the provisions of the statute were not sufficiently comprehensive absolutely to require as a peremptory injunction of statute law, their application in all their length and breadth, and in the same degree to both classes of property, the argument to be derived from the general similarity of the legislative enactments, in regard to both classes of property, from the similar if not equal mischiefs to be remedied, and from the general policy of the law, would authorize a court of equity in the exercise of its acknowledged powers, to apply the same rule of construction to both."

Section 57 of the same statute provides that where a trust is created to receive the rents and profits of lands, and no valid direction for accumulation is given, the surplus beyond what may be necessary for the education and support of the person for whose benefit the trust is created, shall be liable in equity to the claims of his creditors, and it has been held that this applied to trusts of personal property for a like purpose by the analogy which the courts have aimed to preserve between interests or estates in land, or the income thereof, and similar interests in personal property.   (*Williams* v. *Thorn*, 70 N. Y. 272.)   The one hundred and twenty-sixth section of the article on powers provides that "lands embraced in a power to devise shall pass by a will purporting to convey all the real property of the testator," unless the contrary intent appears.   This court has held that the section applies to personal estates.   (*Cutting* v. *Cutting*, 86 N. Y. 544.)   "There is certainly," said the court in that case, "much force in the position that one body of law should not declare a different rule for two kinds of property, when there is nothing in the nature of either kind of property, or in the nature and effect

of the rule that calls for it." There is nothing in the nature of the trust authorized by the statute for the benefit of creditors that would require or warrant the application of one rule to real estate and another to personal, and so we think that the amendment of 1875, above referred to, should be understood as embracing all the property transferred to the assignee whatever its character may be.

It follows that there was a material error committed in the disposition of the case in the courts below. As the case turned substantially upon this point, we will not now inquire as to the effect of the Statute of Limitations or the lapse of time. There is nothing in the defendant's position to induce us to discover some ground for sustaining the judgment that was not apparent to the courts below. The assignee has no personal or equitable right to the fund in his hands, and he should pay it over to the parties entitled to it whoever they may be.

There is no point made as to the jurisdiction of the Supreme Court to entertain the action or that the jurisdiction of the County Court is exclusive. Whatever the law was before the passage of the act (Chapter 380 of the Laws of 1885), the Supreme Court has now jurisdiction in such cases concurrently with the County Court. There is another feature of the case that perhaps deserves some notice. The assignor himself, as well as the creditors, was competent to institute proceedings to call the assignee to account. Every right which was capable of transfer passed to the plaintiff under the instrument executed to him by the party creating the trust, and I am unable to see why the plaintiff does not occupy the same position that the assignor himself would had he brought the action. We do not mean to decide upon the record now before us that the plaintiff is entitled to the fund, or that distribution to the creditors or their personal representatives cannot still be enforced, notwithstanding the long delay, as the Statute of Limitations ordinarily does not commence to run in favor of the trustee of such a trust until a denial or repudiation of its existence or obligations. (*Zebley* v. *Farmers' Loan & Trust Co.*, 139 N. Y. 461.)

It is not necessary now to decide any question with respect to the application of that statute. It is sufficient to say that it is not a case where we should now attempt to uphold a judgment that turned upon other grounds for any reasons based upon the lapse of time. There is no question made with respect to the application of the amendment of 1875 to pre-existing assignments or its constitutional validity. (*Kip* v. *Hirsh*, 103 N. Y. 565; *Morse* v. *Goold*, 11 id. 288.) There are some other questions suggested by the record that are liable to disappear upon a new trial. Without expressing any opinion in regard to them, we think it only necessary now to hold that the plaintiff at the trial showed a sufficient interest in the subject of the trust to enable him to maintain the action, and as the courts below arrived at a contrary conclusion, the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except Gray, J., dissenting.

Judgment reversed.