(21 Misc. Rep. 120.)

BAUMANN v. GUION.

(Supreme Court, Special Term, New York County. May, 1897.)

TENANCY IN COMMON—PARTITION.
One L. and his wife purchased a quantity of furniture from one B., under an agreement in writing that the title should remain in him until the price was paid. The price was afterwards paid in full, and thereafter L. made a general assignment to defendant, who took and retained possession of the furniture, and the right, title, and interest of L.'s wife therein were sold under execution to plaintiff. *Held* that, upon payment of the price of the furniture, it vested in L. and his wife, as tenants in common, in equal shares; that the assignment and the execution sale vested the title to the respective shares in plaintiff and defendant; and that an action could properly be maintained, notwithstanding the exclusive possession by defendant, to obtain a sale of the furniture and a division of the proceeds.

Action by Sidney J. Baumann against George G. Guion, assignee of Richard De Logerot, for the benefit of creditors, to compel the sale of personalty and a division of the proceeds. Judgment for plaintiff.

Shepard & Prentiss (William H. Shepard, of counsel), for plaintiff.

Coudert Bros. (Joseph Kling, of counsel), for defendant.

CHASE, J. In the year 1891, Blanche Hauel De Logerot, wife of Richard De Logerot, was the owner of the buildings at the corner of Fifth avenue and Eighteenth street, in the city of New York, known as "Hotel De Logerot." Richard De Logerot was the proprietor of said hotel, and Blanche Hauel De Logerot lived at the hotel part of the time. On the 22d day of July, 1891, Ludwig Baumann, doing business in the name of Baumann Bros., entered into a written agreement with Richard De Logerot and Blanche Hauel De Logerot, by which agreement Ludwig Baumann, in consideration of $4,500, agreed to furnish the three upper floors, halls, and stairs of the house No. 124 Fifth avenue, as annexed to Hotel De Logerot, in accordance with the schedule annexed to said agreement. Richard De Logerot and Blanche Hauel De Logerot agreed to pay for said furnishings as provided in said agreement, and said agreement further provided that:

"The parties of the second part [Richard De Logerot and Blanche Hauel De Logerot], also promise and agree to effect and maintain fire insurance upon said furniture and other merchandise, according to the value as stated above, and to maintain the same in a sliding scale of reduction as the payments hereinbefore provided for are made, and to deliver the policies therefor to the party of the first part [Ludwig Baumann]; it being understood and agreed that the title to said furniture and other merchandise remains in the party of the first part until the aforesaid sums and interest shall be fully paid."

The payments provided for in said agreement were all made prior to the commencement of this action. On or about the 31st day of August, 1893, Richard De Logerot made a general assignment to George G. Guion for the benefit of his creditors. In the schedules filed by the assignee, and signed by the assignor, is included the furniture purchased as stated under the agreement in writing of July 22, 1891. Richard De Logerot and Blanche Hauel De Logerot had purchased other furniture from Ludwig Baumann, and had given their promissory notes therefor, at least two of which promissory notes were not paid by them, or either of them; and on the 2d day of January, 1894, Ludwig Baumann recovered judgment against Blanche Hauel De Logerot for $2,099.50 on one of said notes, and for $5,189.34 on the other of said notes. Executions were issued on these judgments, and the sheriff made several ineffectual attempts to gain entrance to the Hotel De Logerot. On the 26th day of January, 1894, a writ of replevin was issued to the sheriff of New York county to recover the furniture in said hotel other than that included in the agreement of July 22, 1891; and, with the double purpose of serving this writ of replevin and of making a levy

under the said executions upon the right, title, and interest of Blanche Hauel De Logerot in and to the property mentioned in the agreement of July 22, 1891, the sheriff went to Hotel De Logerot, and gained admission. He went through the hotel from room to room, and a person familiar with the property pointed out the same, piece by piece, and the property mentioned in the writ of replevin was checked from one list, and that levied upon by virtue of the executions was checked from another list; and, when they had finished, a copy of the list of property levied upon under the executions was left with the defendant's son, who represented the defendant at Hotel De Logerot, and in whose possession the property was at the time. The defendant had a list of the property taken under the writ of replevin. On each list the property, so far as possible, was designated by the descriptive marks or numbers that merchants have on their goods by which to designate them. After making the levy and serving the writ of replevin as stated, the sheriff put a watchman in charge of the property levied upon and replevied, and such watchman remained there in possession of the property until after the sale. The property taken by virtue of the executions was the same property purchased under the agreement of July 22, 1891. Notices of the sale, specifying that the sheriff, on the 5th day of February, 1894, would sell all the right, title, and interest of Blanche Hauel De Logerot of, in, and to the furniture, mattresses, carpets, beddings, washstands, etc., contained in Hotel De Logerot, were posted; and on the said 5th day of February, 1894, the sheriff, together with the auctioneer and such persons as attended the sale, went from room to room in Hotel De Logerot, and the articles to be sold under the executions were pointed out and separated; and the sale was had, and the plaintiff became the purchaser of the property mentioned in the complaint herein, but did not remove the property from the buildings.

The statute declaring that every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy, applies to personal estate. Mills v. Husson, 140 N. Y. 99, 35 N. E. 422. Husband and wife may hold personal property in common. Kaufman v. Schoeffel, 46 Hun, 571; In re Albrecht, 136 N. Y. 91, 32 N. E. 632. Where a conveyance or agreement of sale to two or more persons does not state the interest of each, their interests are presumed to be equal. Campau v. Campau, 44 Mich. 31. Under the agreement of July 22, 1891, Richard De Logerot and Blanche Hauel De Logerot became the owners of the personal property mentioned in the agreement, as tenants in common, in equal shares, subject to the title remaining in Ludwig Baumann for his security until the payment of the purchase price as provided by the agreement. The purchase price having been paid as provided by the agreement, the title vested in them. Richard De Logerot had no right or authority to sell the interest or share of his wife by virtue of his being an owner with her as tenant in common, and there is no pretense that he ever sold or claimed to sell the share of his wife in such property by virtue of his power of attorney from her. In the absence

of some agreement subsequent to July 22, 1891, the possession of Richard De Logerot and of his assignee after his assignment does not create any presumption of exclusive ownership in them. The general assignment of Richard De Logerot vested in the defendant as such assignee, the right, title, and interest of Richard De Logerot; and the sale under the executions vested in the plaintiff the right, title, and interest of Blanche Hauel De Logerot in the personal property in question; and the plaintiff and defendant thus became equal owners thereof, as tenants in common. The rule that the formalities in forced alienations, like the levy and sale in this case, are to be strictly observed, is intended for the benefit of the defendant in the execution and the purchaser. It does not appear that the plaintiff had any knowledge of the formal notice of sale, or of its contents, and there was no irregularity in the levy and sale of which the defendant in this action can complain. The property was of such a character as not to be readily divisible except by agreement between the parties, and they were unable to come to any agreement in regard to a division or sale. As the property was not in its nature separable, this action in equity is the proper remedy, and the fact that the property, at the commencement of this action, was in the exclusive possession of the defendant, will not defeat the action. Freem. Co-Ten. § 448; Tripp v. Riley, 15 Barb. 333; Pom. Eq. Jur. (2d Ed.) § 1391.

Under an agreement by the parties to this action subsequent to the commencement of the action, the property was actually sold, and the proceeds, amounting to $3,652.06, were deposited on the 11th day of April, 1894, in the New York Security & Trust Company, to the credit of this action, to stand in lieu of the property, and subject to the further order or judgment of this court. The plaintiff is entitled to judgment declaring that the property mentioned in the complaint was, and the proceeds thereof are, the property of the parties hereto, in equal shares, and directing the New York Security & Trust Company to pay over such fund, together with any accumulated interest thereon, accordingly. Costs of this action are awarded to the plaintiff, payable out of the said fund prior to said division.