### MEEKER v. BREWER et al.
### No. 38.

Circuit Court of Appeals, Second Circuit.

Nov. 30, 1936.

Lynch, Cahn & Weed, of White Plains, N. Y. (Monroe J. Cahn and Harold M. Miller, both of White Plains, N. Y., of counsel), for appellant.

McNamara & Seymour, of New York City (Charles Green Smith, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The nine defendants executed a joint subscription for one hundred and fifty shares of stock in a national bank and a

single certificate was issued in the names of all nine. It read as follows: "This certifies that R. P. Brewer, Wm. J. Kuder, C. C. Merritt, F. J. Fowler, R. A. Burger, Fred T. Wilson, Wm. J. Kuntz, Geo. W. Mahlstedt and Chas. M. Baxter is" (sic) "the owner of One Hundred and Fifty Shares of the Capital Stock of First National Bank of Mamaroneck." The only question in the case is whether the liability of each as shareholder is $15,000, or only one ninth of that amount, $1,666.-66. The occasion of their subscription was that they were the nine directors of a former bank which was to be consolidated with another and merged into the new bank of which the plaintiff is now the receiver. The new shares had not been fully taken up at two hundred dollars, at which they were offered, and other bankers interested in the project insisted that the defendants should together subscribe for one hundred and fifty shares in addition to those which they had already taken. This they did by a subscription, upon which an annotation was endorsed that each should be liable for only one-ninth of the whole amount, $30,-000. They borrowed this sum upon their joint note, and as security assigned the certificate after it had been issued. They also executed an agreement with each other that as between themselves their several liability upon the note should be limited to one ninth of its face.

Regardless of the undisputed joint obligation of the note, and for that matter of the subscription, even had that been joint, the defendants held the shares as owners in common, for the certificate did not express the contrary. This has long been the rule in New York as to real property (section 66, Real Property Law [Consol.Laws, c. 50]), and the courts have extended it to personalty. So much was assumed sub silentio in Everitt v. Everitt, 29 N.Y. 39, 72, 73, and has since been several times expressly recognized. Bliven v. Seymour, 88 N.Y. 469, 478; Mills v. Hussan, 140 N.Y. 99, 104, 35 N.E. 422; In re Kimberly's Estate, 150 N.Y. 90, 44 N.E. 945; In re Blumenthal's Estate, 236 N.Y. 448, 141 N.E. 911, 30 A.L.R. 901. Section 5151 of the Revised Statutes (12 U.S.C.A. § 63) enacted that "shareholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein," and section 23 of the Act of December 23, 1913 (38 Stat. 273 [12 U.S.C.A. § 64]), is in the same words except that "shareholders" has been changed to "stockholders," and that the phrase, "to the extent of the amount of their stock therein," now reads "each to the amount of his stock therein"; changes that can hardly import any new intent. In Chisholm v. Gilmer, 81 F.(2d) 120 (C.C.A.4), the defendants as here had been directors of a bank, and had subscribed for added shares which, unlike the defendants at bar, they did not mean to keep. These they took in the name of one of their number as trustee, and he was to peddle them out to the public, which he did not succeed in doing. The court held all the shareholders in solido for two reasons; first, because they were engaged in a joint venture, and second, because their subscription agreement was in any case joint. Having found the enterprise joint the court thought it "too clear for argument" that the shareholders' liability must follow that model. The venture was indeed different from that in which the defendants at bar were engaged; perhaps that difference is enough to distinguish the case, even if the underlying doctrine be right. Here each defendant expected to hold his proportion of the shares as he held those which he had bought separately; it was not a purchase to be closed out as soon as possible. But if that be wrong, we cannot agree that the statutory liability is joint whenever the enterprise of which it is a part is joint; the liability is not contractual, though it is not indeed imposed in invitum. It is an incident to the ownership of the shares upon which it follows regardless of the shareholder's knowledge even of its existence. McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann. Cas. 740; Forrest v. Jack, 294 U.S. 158, 162, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457. Why its character should necessarily follow that of the general undertaking, we do not see. The section suggests no such connection; it makes the shareholders responsible "to the amount of their stock," fixing the quantum of that interest as the measure of the liability. True, the holding will often be joint because the venture is joint; and when that is so, the statutory liability may follow; but if so,

it will follow, not because of the venture, but because of the ownership. The second ground of Chisholm v. Gilmer, supra, we need not consider; even if it be good, the subscription contract at bar was expressly made several, and that distinguishes it. We cannot see that English v. Gamble, 26 F.(2d) 28 (C.C.A.8) is pertinent. When Chisholm v. Gilmer, supra, went to the Supreme Court (299 U.S. 99, 57 S.; Ct. 65, 81 L.Ed. ——), the point here in question was not involved.

In modern times courts have in general leaned heavily against joint liability, and the same disposition underlies the statutes which have so generally changed the ancient doctrine. That doctrine itself arose from feudal conveniences, after whose disappearance judges have felt, not only that survivorship defeats the implicit understanding of the parties, but that in the absence of some contrary assurance to third parties, co-owners ought not to respond in solido for duties appurtenant to the property, or be forced to rely upon recourse over for indemnity. Were there good reason for implying such an assurance to creditors from the mere presence of several names upon a single certificate, or on the company's register, it might be permissible to import liability in solido here; but we can see none. If it were inevitably, or even very commonly, true that shareholders who joined in one certificate were joint tenants, conceivably, though even then only conceivably, creditors might be misled unless each were liable for all. But, passing the improbability that any creditor will consult the register at all, or be guided by the entries if he does, he would assume at his peril that the holding was joint.

Judgment affirmed.