Thomas A. E. Lally and John J. Lally, both of Spokane, Wash., for appellant.

James A. Brown and B. H. Kizer of Graves, Kizer & Graves, both of Spokane, Wash., for appellees.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

**ROBBINS v. MITCHELL et al.**

No. 9112.

Circuit Court of Appeals, Ninth Circuit.

Oct. 27, 1939.

HEALY, Circuit Judge.

In January, 1929, the Exchange National Bank of Spokane, a national banking association, was declared insolvent by the Comptroller of the Currency. At that time, appellee Samuel A. Mitchell was the owner of 123 shares of the capital stock of the association of the par value of $100 per share. Pursuant to an assessment levied by the comptroller, Mitchell became subject to the super-added statutory liability in the amount of $12,300. He paid to the receiver of the association the sum of $2,000 in cash on account of this liability, and thereafter, about July 15, 1930, for the purpose of securing the payment of the remainder, made and delivered to the then receiver his note and mortgage in the sum of $11,-280.50. His wife joined in the execution of these instruments. During the period of the receivership Mitchell made payments on the note aggregating $1,100.

In July, 1934, the receiver was succeeded by Thomas A. E. Lally, who continued to

act as receiver and liquidator of the association until the summer of 1936, at which time Lally wound up the receivership, paid all depositors and creditors of the association, both principal and interest in full, paid all expenses of the receivership, and redeemed and paid all circulating notes and currency. About September 16, 1936, the receiver was discharged in the manner provided by law, and appellant Robbins was elected as statutory agent for the shareholders. Upon the election and confirmation of Robbins, the receiver turned over to him all of the property and assets of the association. Included were appellees' note and mortgage.

The suit is on the note and mortgage. It was commenced by the receiver in June, 1936, and in November of that year appellant was substituted as plaintiff. The court gave judgment in favor of the appellees, finding, in addition to the foregoing, that the instruments sued upon did not constitute a pledge; and that upon the redemption and payment in full of all the obligations of the association and of the receivership, as previously indicated, the consideration for which the note and mortgage were given failed in its entirety. The court concluded that appellant was not entitled to contribution or subrogation, and that neither the liability of Mitchell nor the instruments given to secure it became an asset of the association.

It was disclosed on the trial that of the 165 shareholders of the bank, 131 had paid their assessments in full, 6 had obtained compromises, and 28 had paid in part or not at all. On the appeal it is contended that the note and mortgage were not given solely to secure the payment of Mitchell's statutory liability, but also to secure the payment to the other shareholders of any amounts to which they might become entitled by way of contribution; and that this security was part of the assets which appellant, as shareholders' agent, was required to liquidate for the benefit of the shareholders. The contention, so far as it involves an assertion of fact, is without support in the evidence and is contrary to the findings.

Appellant argues, as a matter of law, that the shareholders who paid more than their ratable share of the bank's obligations became subrogated to the claims of the creditors, and that appellant is entitled to enforce this right of subrogation as trustee for these shareholders.

The statute, 12 U.S.C.A. § 197, provides that the shareholders' agent, who may be elected in lieu of the receiver for the purpose of winding up the affairs of the association, "shall hold, control, and dispose of the assets and property of such association * * * for the benefit of the shareholders of such association, and he may in his own name, or in the name of such association, sue and be sued and do all other lawful acts and things necessary to finally settle and distribute the assets and property in his hands * * *." The statute also provides for the priorities in the distribution of the assets remaining. The statute does not authorize the agent to sue on claims of individual shareholders; and there is no showing that any shareholder had in fact invested the agent with authority to sue in his behalf. In this posture of the case it is unnecessary to consider what rights, if any, shareholders who have paid their assessments may have against those who have not paid.[1]

The individual liability of the stockholders of a national banking association is that they "shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. * * *" 12 U.S.C.A. § 64. On voluntary liquidation of an association, any creditor may enforce this liability. 12 U.S.C.A. § 65. The receiver may, "if necessary to pay the debts of such association, enforce the individual liability of the stockholders." 12 U.S.C.A. § 192. The liability is both statutory and quasi-contractual in its origin and basis. Brown v. O'Keefe, 300 U.S. 598, 606, 57 S.Ct. 543, 81 L.Ed. 827. Compare Erickson v. Richardson, 9 Cir., 86 F.2d 963. It is an asset of the creditors, not of the association, and cannot be enforced after the creditors have been paid. Church v. Ayer, D.C.Conn., 80 F. 543; Lally v. Anderson, 1938, 194 Wash. 536, 78 P.2d 603; Page v. Jones, 8 Cir., 7 F.2d 541; Dunn v. O'Connor, 67 App.D.C. 76, 89 F.2d 820. The note and mortgage given by Mitchell to secure his statutory liability did not become an asset of the association.

Affirmed.

[1] Early in the history of the National Banking Act it was held in Kennedy v. Gibson, 8 Wall. 498, 505, 19 L.Ed. 476, that "the liability of the stockholders is several and not joint."