FRANK et al. v. GIESY et al.

JENSEN et al. v. SAME.

LORD et al. v. SAME.

No. 9429.

Circuit Court of Appeals, Ninth Circuit.

Jan. 27, 1941.

Latourette & Latourette and Lincoln S. Ferris, all of Portland, Or., for appellees.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellants, shareholders of the American National Bank of Portland, appeal from a judgment against them predicated on their shareholders' liability under 12 U.S.C.A. § 63.[1]

In 1923 appellees leased premises in Portland to the Broadway Bank, a state bank, for a term of 30 years. Later the Broadway Bank became a national bank under the name of Portland National, and still later, in 1929, it was consolidated with the American Exchange Bank, a state bank, to form the American National Bank, of which appellants are shareholders.

Upon the consolidation the leased premises ceased to be used as bank quarters. The lease was carried as an asset by the American National Bank until 1932, when the Comptroller of the Currency directed that it be disposed of. In obedience to the order the lease was assigned to affiliates of the American National. The assignment, made without the consent of the lessors, was in violation of a provision of the lease, but was later ratified by the lessors in consideration of the bank's promise "to remain bound and obligated" under the terms and conditions of the lease. Ultimately the capital of the American National became impaired and in consequence the bank on June 20, 1933, entered into a contract with the First National Bank of Portland whereby the latter agreed to accept the assets and assume the liabilities of the American National upon condition that the American National furnish an added sum in cash and provide guarantors to protect the First National against loss on certain of the assets accepted and on any liabilities not specifically assumed. The First National undertook no liability on account of the lease. As the means of raising the additional cash needed to effect the agreement the American National sold to Aaron Frank, one of the appellants, and others, certain doubtful assets not taken over by the First National, and these persons also furnished the requisite guaranty. After having disposed of its assets in this manner, the American Nation-

Ralph H. King, of Portland, Or. (Joseph, Veatch & Bradshaw and McCamant, Thompson, King & Wood, all of Portland, Or., of counsel), for appellants Frank et al.

---

[1] "The shareholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof * * *." Act of December 23, 1913, c. 6, § 23, 38 Stat. 273. Compare 12 U.S.C.A. § 64a.

al, in July, 1933, went into voluntary liquidation. 12 U.S.C.A. § 181.

The lease in question provided for the payment of graduated rentals ranging from $450 per month for the first five years to $600 for the last five, and the lessee was required to pay all taxes, assessments and insurance premiums. Right of reentry was reserved in the lessors in the event of default. There were no specific covenants for indemnity in such event, or for the payment of liquidated damages.

The American National paid the rent to the date of its assignment of the lease, and thereafter the rent was paid by the assignees until October, 1933, at which time the assignees abandoned the premises. The lessors promptly brought suit in the state court against the American National and the assignees to recover delinquent taxes plus the rentals for October and November, 1933, recovering judgment therefor in the sum of $10,163.54. Thereafter the lessors began action in the state court against the American National and the First National to impress a trust on the assets transferred to the latter for the discharge of this judgment and of rentals for intervening months. The trial court granted the relief sought, but on appeal it was held that the assets in the possession of the First National were subject to such claims only as were in existence at the time of the transfer. However, the judgment was affirmed in its entirety as to the American National. Giesy v. American National Bank, 152 Or. 516, 53 P.2d 20, certiorari denied 299 U.S. 547, 57 S.Ct. 10, 81 L.Ed. 402. This judgment, to the extent that it was binding on the assets, was ultimately paid by Frank and his co-guarantors.

Prior to the final disposition of the case mentioned the lessors commenced a third action in the state court to collect rents, taxes, and insurance premiums accruing after January, 1934. The suit was contested but resulted in the rendition of judgment against the American National for $31,004, which included all amounts delinquent under the lease to May 1, 1937, less sums obtained from occasional tenants. As of the latter date the lessors elected to terminate the lease.

The aim of the present suit against the shareholders is to obtain satisfaction of this judgment. The suit is in the nature of a general creditors' bill. Judgment is sought against all of the shareholders in the full amount of their holdings. In their answer appellants alleged as their primary defense that "neither said judgment nor any part thereof is founded on any debt, contract or engagement of said American National Bank duly made in the exercise of its corporate powers or in the due course of its business."

The court made findings substantially in line with the foregoing summary and concluded that the plaintiffs were entitled to judgment against each defendant individually to the extent of the par value of his stock, provided that the judgment against any one stockholder, and the aggregate satisfaction to be derived from all, should not exceed the amount owing with interest. Judgment was entered accordingly.

Preliminarily, there is disagreement here as to the scope of certain admissions of appellants recited in a pre-trial order. In a measure these recitals are inconsistent and we will not attempt to resolve the dispute concerning the effect of the order but will for the most part give appellants the benefit of the doubt.

(1) They contend first that the court had no jurisdiction to treat the suit as one for the recovery of a definite sum due the plaintiffs. They say that such an action must be at law, and that the sole province of the court in equity was to ascertain the total indebtedness of the American National and assess the shareholders in the amounts sufficient to satisfy the debt, the money thus collected to constitute a trust fund for all creditors proving claims.

We think, in the present circumstances, there was substantial compliance with the statute. It provides that "when any National Banking Association shall have gone into liquidation under the provisions of section 181 of this title, the individual liability of the shareholders provided for by section 63 of this title may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and of all other creditors of the association, against the shareholders thereof, in any court of the United States having original jurisdiction in equity for the district in which such association may have been located or established." Act of June 30, 1876, 19 Stat. 63, 12 U.S.C.A. § 65. In such suit the appointment of a receiver is not essential. Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864; Braun v. Limerick National Bank, D.C., 9 F.Supp. 816, 817.

Here the bill alleges that it is brought by the plaintiffs "on behalf of themselves and all other creditors of the bank." The record does not disclose that notice was given for the presentation of claims nor did any creditors appear by intervention or otherwise. But the complaint alleges, the answer admits, and the court found that all the liabilities of the bank with the exception of the lease were assumed by the First National. Presumably these liabilities have been discharged. Indeed, the trial appears to have been had upon the general assumption that the plaintiffs were the sole remaining creditors. But it is claimed here, for the first time, that appellant Frank and his co-guarantors, who satisfied the previous judgment recovered by appellees, are themselves creditors. The argument proceeds upon the theory of subrogation and on the authority of Scott v. Norton Hardware Co., 4 Cir., 54 F.2d 1047; Hall v. Ballard, 4 Cir., 90 F.2d 939.

■ The suggestion that these persons are creditors is an obvious afterthought. Frank, although a party to the case, made no claim below that he is a creditor. We do not know who the other supposed guarantors are. It may well be that they, too, are stock-holders of the American National and parties to the suit. In any event the issue is injected too late to be of service to appellants.

(2) It is next argued that the statutory liability of the shareholders is ratable or proportional, and that the court erred in entering judgment against certain shareholders in the full amount of their stock while letting others go free.

The vissicitudes of the statutes imposing double liability on the shareholders of national banks is reviewed in American Trust Co. v. Grut, 9 Cir., 80 F.2d 155, and the ground need not be gone over again. Prior to the adoption of the applicable statute, in 1913, the shareholders were "held individually responsible, equally and ratably, and not one for another." Act of June 3, 1864, 13 Stat. 102. In United States ex rel. Citizens' Nat. Bank v. Knox, 102 U.S. 422, 26 L.Ed. 216, it was held that the liability imposed was several and proportional. The court noted the obvious and striking difference between the language of the 1864 act

and that of the previous act of February 25, 1863, 12 Stat. 668, which provided simply that each shareholder should "be liable to the amount, at their par value, of the shares held by him."

■ Equally obvious and striking is the difference between the wording of the 1913 statute and the act it supplanted. The governing statute provides that the shareholders "shall be held individually responsible * * * to the extent of the amount of their stock" at the par value. 12 U.S.C.A. § 63. In our view the statute can mean only that the liability of each shareholder is several. First National Bank in Eureka v. First Nat. Bank, D.C.Kan., 14 F.2d 129; Wilson v. Crutcher, 176 Okl. 481, 56 P.2d 416; 9 C.J.S., Banks and Banking, § 601, p. 1138. See also, Flash v. Conn, 109 U.S. 371, 3 S.Ct. 263, 27 L.Ed. 966; Matter of Hollister Bank, 27 N.Y. 393, 13 E. P. Smith 393, 84 Am.Dec. 292; Crease v. Babcock, 10 Metc., Mass., 525; Harper v. Carroll, 66 Minn. 487, 69 N.W. 610, 1069.[2] There is no discernible ambiguity in the statute and we are obliged to conclude that Congress intended to strengthen the position of creditors by removing the pro rata limitation. The conclusion is not out of harmony with the general purpose of the amendment.

■■ (3) It is asserted that the American National's assumption of liability under the lease when the bank had no intention of using the property for banking quarters, and its guaranty of the payment of rentals upon its assignment of the lease, were ultra vires. But there can be no doubt that the lease was a valid obligation of the Portland National at the time of its consolidation with the American Exchange. 12 U.S.C.A. § 29; Brown v. Schlier, 194 U.S. 18, 24 S.Ct. 558, 48 L.Ed. 857. And we believe the lease did not become ultra vires simply because the lessee, upon its consolidation with another bank, no longer occupied the leased premises. The statute relating to consolidations such as this provides that "upon such a consolidation, or upon a consolidation of two or more national banking associations under section 33 of this title, the corporate existence of each of the constituent banks * * * shall be merged into and continued in the consolidated national banking association and the

---

[2] Although at least two cases contain remarks indicating that liability under the 1913 statute is proportional, in neither was the question directly involved. See Bank of Ware Shoals v. Martin, D.C., 17 F.Supp. 61, 63; Taylor v. Fontaine, Mo. App., 10 S.W.2d 68, 71, 72. In Meeker v. Brewer, 2 Cir., 86 F.2d 645, the 1864 statute was misquoted.

consolidated association shall be deemed to be the same corporation as each of the constituent institutions". 12 U.S.C.A. § 34a. Also, that "all the rights, franchises, and interests of each of such constituent banks * * * . in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such consolidated national banking association without any deed or other transfer * * *." By implication the consolidated bank must necessarily be held to assume the correlative liabilities. See 7 R.C.L. 182: First National Bank of Tulsa v. Hoover, Tex.Civ. App., 269 S.W. 262, 265.

If, as we hold, the American National was burdened with the lease upon the consolidation, its burden was not enhanced by the express assumption of liability, or by its guaranty of rentals upon the assignment. Cf. People's Bank of Belleville v. National Bank of Chicago, 101 U.S. 181, 25 L.Ed. 907; Farmers' & Miners' Bank v. Bluefield National Bank, 4 Cir., 11 F.2d 83, certiorari denied, 271 U.S. 669, 46 S.Ct. 483, 70 L.Ed. 1142. The case of Houston v. Drake, 9 Cir., 97 F.2d 863 is clearly distinguishable.

(4) It is urged that the complaint fails to state a cause of action because it is founded upon a judgment for rentals accruing after the bank went into liquidation. The lessors, it is said are no better off than they would be had a receiver been appointed and the lease formally rejected. The Supreme Court of Oregon in Giesy v. American National Bank, supra, pointed out that the lessors had not elected to liquidate their rights under the lease, once and for all, by relying upon the doctrine of anticipatory breach. It held that they were entitled to share in the assets transferred to the First National only to the extent their claim had matured as of the date of the transfer. It is to be noted, however, that the judgment which it affirmed in its entirety as against the American National included not only taxes and assessments due at that date (all rentals having been paid), but also rentals accruing for two months subsequent to the transfer (October and November 1933). .

The judgment on which the present suit is predicated was one for accrued rents. But, as observed by the trial court, "plaintiffs' damages, by the accepted rule of determining damages for breach of a lease, are in exactly the same amount as the judgment which was taken for rent, taxes, and insurance." Accordingly, the amount of the judgment was found to be the "actual damage sustained by plaintiffs."

We are not here concerned with the rule in equity receiverships, nor with the provability of rent claims, as such. See Dickinson v. Universal Service Stations, 9 Cir., 100 F.2d 753. It is enough to point out that the lease was a subsisting obligation of the bank at the time of its liquidation. The judgment was an adjudication of the liability of the bank. The judgment remains unsatisfied. It is a "debt or engagement" of the association for which its stockholders are made individually responsible. The present suit is not a proceeding against the bank's assets, for the superadded liability of the shareholders is not an asset of the bank, Robbins v. Mitchell, 9 Cir., 107 F.2d 56, but is in the nature of a fund to which creditors may resort when the assets of the bank are insufficient to meet their claims.

(5) The complaint alleges that George W. Joseph, who owned 10 shares of stock, died in 1930, and that at the time the bank went into liquidation in 1933 this stock was still carried in his name on the bank's books. Also, that the estate was duly probated, that the defendants George W. Joseph Jr. and Bertha Joseph, as sole heirs at law, were distributees thereof, and that each received property greatly in excess of the par value of the stock. As to defendant Julius L. Meier Jr., the complaint alleges that he is the executor of Julius L. Meier; that Julius L. Meier, the owner of 10 shares of stock, died in 1937, and that the named defendant has succeeded as executor to the interest in said stock; and that the assets of the estate exceed the par value of the stock.

It is asserted here that these allegations are fatally defective for the reasons (1) that there is no averment that claims were presented in the course of the administration of the estates of the deceased stockholders, as required by state law, and (2) that as regards the defendants Joseph there is no averment that they, as distributees, accepted the stock.

The points were not suggested below. The three defendants affected interposed no demurrer, motion to dismiss, or any special plea. They joined with other defendants in an answer in which no issue of fact or law was raised concerning their non-liability on the special grounds here presented. All of the parties, these three included, participated in a pre-trial confer-

ence in which they undertook to limit the issue of ultimate liability to certain broad questions of law affecting all defendants alike. Rule 16, Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Their attorney stated: "we would like the record to show that it is our understanding that the sole question for decision in this case is whether or not the stockholders of the Bank are liable for the amount of this judgment, which is for rentals and taxes accruing after the bank went into liquidation." Plainly, the questions of pleading now sought to be argued were waived, and the trial proceeded on the assumption that the Josephs and the estate of Meier were liable under the federal statute if stockholders generally were to be held. In this state of the record the questions will not be considered on appeal. Where the pre-trial procedure is resorted to the spirit of the procedure must be observed.

(6) Since, as has been seen, the liability of the shareholders is several and not joint, the dismissal with prejudice as to the trustees of the estate of Cook did not foreclose a continuance of the suit against the other defendants.

Affirmed.